In the Matter of the Claim of ETTA MANNING, Respondent, against WILLIAM C. WHALEN, Non-Insured Employer, Appellant, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Respondent.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 15, 1940.

*Quigley, Vedder & McCarthy* [*C. J. McCarthy* of counsel], for the employer, appellant.

*G. Sidney Shane,* for the claimant, respondent.

*Love & Keating* [*S. H. Millener* of counsel], for the insurance carrier, respondent.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin, Isaac Frank* and *John F. Loehr, Assistant Attorneys-General,* of counsel], for the State Industrial Board.

CRAPSER, J. William C. Whalen was the owner of a saw mill at Great Valley, N. Y., which he had operated for some years prior to November 24, 1937. It was a small enterprise operated by about four men in which Whalen sawed his own lumber and did some custom sawing.

On November 24, 1937, Whalen leased the saw mill to Lloyd Manning, Joe Wise, Bernard Jones and Carl Jones by a written lease providing for a term of two years. The lessees were to have the entire charge of operating and running the mill. They were to do custom sawing for various customers and to saw logs for Mr. Whalen, taking all risks of the operations. The lessees were to keep the mill in repair and save Whalen free and harmless from any and all claims by reason of injury, damage or accident or other claims which might arise out of the operation of the mill. They were to pay as rent the sum of two dollars for each thousand feet sawed; settlement was to be made each Saturday. Whalen was to pay six dollars a thousand feet for lumber sawed for him. Upon failure to pay the rental each Saturday and to keep the mill in repair the lease could be canceled on seven days' notice.

Joe Wise, Bernard and Carl Jones had worked in the mill before the lease was signed. Manning, the deceased, had never worked in the mill for Whalen. He had worked on the farm and had taken contracts from Whalen.

The lessees, after making the agreement, had full charge of operating the mill. They did some custom sawing. Whalen had no control. They arranged their own working hours and the manner in which they should do the work. Their earnings, the division of which was not equal, were divided among them according to an understanding of which Whalen had no knowledge. He did not pay them any wages. He had paid wages to three of them before for working in the mill, but not to the deceased. The deceased furnished the small tools.

Whalen testified that his reason for entering into the contract was that he was away much of the time and that there was nothing accomplished while he was away and that it cost more to saw the lumber than it would sell for. He testified that the contract was not prepared to avoid the payment of compensation.

Before making the lease the lessees decided among themselves what they would get a thousand and in what way they would divide among themselves the money they earned.

Some of the lessees testified that they understood that Whalen could not afford to run the mill because the compensation was too high and the men decided to lease the mill and run it themselves. Previous to making the lease they had worked by the day and received their pay accordingly; afterwards they were in absolute control of the operations and Whalen had no right to and did not direct them as to how they should do the work. When they worked for Whalen he carried compensation for them. After the lease was made this policy was canceled or lapsed. Whalen took out

another policy which was offered in evidence and which covered his operations other than the saw mill. This new policy was not intended to and did not cover the saw mill operations.

The contract had been carried out both by Whalen and the lessees from the time of the inception to the death of the decedent and the lessees operated the mill without interference or direction on the part of the lessor.

Whalen was not represented at the hearing except by the attorney for the insurance carrier, who was seeking to and did avoid liability. The said attorney was in no position to represent Whalen. Whalen's testimony was limited to what was requested by the carrier. Application for review was denied by the Industrial Board.

The workmen's compensation policy issued by the United States Fidelity and Guaranty Company did not cover the employment of claimant's intestate on March 22, 1938, the date of the accident resulting in his death. (*Matter of Langley* v. *Hennessey*, 265 N. Y. 529.)

" Employee " means a person engaged in one of the occupations enumerated in section 3 or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant or in the course of his employment away from the plant of his employer; and shall not include farm laborers but may include volunteer firemen. (Workmen's Comp. Law, § 2, subd. 4.)

" This definition is not inimical to and does not disturb the distinctions established in the common law between a servant or employee and an independent contractor. The rules which demarcated the relation of master and servant from that of employer and independent contractor are operative in the consideration of claims made under the act. * * * It is manifest that it deals with employers and employees, and an independent contractor is not within its protection." (*Matter of Litts* v. *Risley Lumber Co.*, 224 N. Y. 324.)

" A partnership is * * * a contract of two or more persons to place their money, effects, labor or skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions." (*Pattison* v. *Blanchard*, 5 N. Y. 186; *Martin* v. *Peyton*, 246 id. 213.)

An independent contractor does the work of the person with whom he contracts, without supervision by such person as to his methods of doing it. He is not bound by regular hours of work, receives a lump sum agreed upon in advance rather than pay by the day or hour and is not subject to discharge. (*Matter of Fancher* v. *Boston Excelsior Co.*, 235 N. Y. 272; *Matter of Beach* v. *Velzy*,

238 id. 100; *Matter of Dunn* v. *University of Rochester*, 266 id. 362; *Matter of Boardway* v. *Kellas*, 258 id. 545.)

There is no evidence in this record to support the finding that on the day the decedent sustained the accidental injuries which resulted in his death he was employed as a sawyer by William C. Whalen and that said Whalen on that day was engaged in the operation of a saw mill.

The award should be reversed and the claim dismissed on the ground that the decedent, Manning, was not an employee of William C. Whalen at the time of the accident but was an independent contractor.

HILL, P. J., HEFFERNAN, SCHENCK and FOSTER, JJ., concur.

Award reversed and claim dismissed, without costs.