Ethel BECKERMAN and Abraham Beck-
erman, on behalf of themselves and all
other participants in Times Square As-
sociates, a New York trust, similarly sit-
uated and in the right of Times Square
Associates, Plaintiffs,

v.

Ira J. SANDS et al., Defendants.

No. 72 Civ. 3188.

United States District Court,
S. D. New York.

Oct. 11, 1973.

Schwartz, Kaufman & Sklaver, New York City, for plaintiffs; Harvey M. Sklaver, New York City, of counsel.

Botein, Hays, Sklar & Herzberg, New York City, for defendants; Alvin H. Schulman, Richard Cashman, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Ethel and Abraham Beckerman ("the Beckermans"), two participants in a real estate syndicate, Times Square Associates ("Associates"), bring this diversity action directly on behalf of themselves and all other participants and derivatively on behalf of Associates. They allege breach of trust by defendant, Sands, and diversion of Associates' funds by him to defendant, F. S. Management Corp.

Defendants move to dismiss for lack of jurisdiction. They contend that the Beckermans' non-derivative claim must be dismissed for lack of the jurisdictional amount (28 U.S.C. § 1332) and that the derivative claim must be dismissed for lack of diversity. The Beckermans move for a class action determination and for the appointment of a receiver.

### I. Motion to Dismiss.

The Beckermans oppose dismissal on several grounds. As to the non-derivative suit, they argue that the requisite jurisdictional amount exists because 1) the suit is either a true or a hybrid class action and, therefore, the claims of the individual members of the class may be aggregated or 2) the amount of the Beckermans' claim taken alone exceeds $10,000. As to the derivative suit, it is claimed that either diversity exists because the suit is a class action or, if diversity is absent, the claim can nevertheless be entertained as pendent to the direct suit.

The Beckermans' position is founded on the thesis that Associates is a partnership, that the action is essentially to compel an accounting by the managing partner, and that joinder of all partners is compulsory and aggregation of their claims permissible. A corollary to the claim that Associates is a partnership is that a derivative action may be brought on its behalf.

Defendants contend that Associates is not a partnership and that, consequently, neither of the above positions is tenable.

If no partnership exists, they argue, then the Beckermans must establish the existence of the jurisdictional amount by their individual claim. This, defendants contend, the Beckermans cannot do.

■■ We turn to the central issue whether Associates is a partnership. The starting point of the investigation must necessarily be the Uniform Partnership Law. That act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit". Partnership Law § 10(1). The act further provides that "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." *Id.* at § 11(4). However, it is clear, if not from the statute itself, at least from its judicial gloss that a partnership agreement is a contract, which cannot come into being without the understanding and consent of all the contracting parties. *See, e. g.,* Manning v. Whalen, 259 App.Div. 490, 20 N.Y.S.2d 364 (1940); Graziani v. Rohan, 195 N.Y.S.2d 156 (S.Ct.1959), rev'd on other grounds, 10 A.D.2d 154, 198 N.Y.S.2d 383, aff'd, 8 N.Y.2d 967, 204 N.Y.S.2d 346, 169 N.E.2d 8 (1960). Such consent is required in part because formation of a partnership constitutes every partner the agent of the partnership for the purpose of its business. Partnership Law § 20(1). Accordingly, "[w]hether two or more persons are partners, as between themselves, is determinable chiefly by a reference to their own intention." Salter v. Ham, 31 N.Y. 321, 327 (1865). *See also* Kent v. Universal Film Mfg. Co., 200 App.Div. 539, 193 N.Y.S. 838 (1922); Fullam v. Peterson, 21 N.Y.S. 2d 797 (S.Ct.1940).

With these rudimentary principles in mind, we turn to the agreement itself to determine whether the parties intended to ·bring into being a partnership and whether they succeeded in doing so. There is no doubt that initially Associates was a partnership consisting of defendant Sands and two other persons (hereinafter called "the partners"). After the formation of *their* partnership, the partners entered into separate agreements with approximately one hundred and fifty other persons (hereinafter called "the participants"), by which the latter were to invest in the partnership business and to share in its profits and losses. The original partners other than Sands subsequently withdrew from the business. The agreement which is in question here (Complaint, exhibit 2) is that entered into between the partners and the participants, including the Beckermans. It should at this point be noted that each participant entered into a separate agreement with one of the partners, all of the agreements being identical. A careful perusal of these agreements leads us to conclude that a partnership was not and could not have been created by them.

■ There are a number of reasons for this conclusion. First, it is noteworthy that the agreements are not designated as partnership agreements and at no time refer to the participants as partners. To the contrary, a careful distinction is drawn between the original partners, who *are* nominated throughout either "partners" or "agents", and the participants, who are not. The documents, in fact, at one point refer to the interest of the participants as "securities", a term which is entirely misplaced in a standard partnership agreement. (Complaint, exhibit 2, par. (k)). Second, the partnership of which the agreements speak, consisting of the three original partners, is terminable on the death of any one of the three original partners (*id.* at par. 4). Upon the death of a participant, however, his interest passes to his heirs with the consent of the one partner or "agent" with whom he contracted. (*Id.*, par. 7.) Furthermore, a participant can transfer his interest with the consent of the same partner. (*Id.*, par. 6.) Third, it is clear from the agreements that although each of the three original partners is an agent of the other "partners", none of the participants is authorized to act as such. Fourth, the agreements which, as noted above, were entered into separate-

ly by each participant with one partner state that they are to "be binding upon all the Participants." (Id., par. 13.) However, they do not purport to bind the two other partners and their signatures do not appear thereon. Accordingly, although the knowledge and consent of the three original partners to the profit-sharing scheme may be inferred, it is not expressly indicated in the separate agreements. Finally, although the agreements provide that they are to be construed in accordance with the laws of the State of New York, they do not refer to the Partnership Law.

In light of these considerations, we believe that it is highly probable that the parties did not intend the agreements to create a partnership and it is certain that, if they did intend to do so, they failed, because the association which they created did not comply with applicable law. In particular, the fact that none of the partners consented by the agreement to the agency of the participants (as provided by Section 20 of the Partnership Law) and that the participants could transfer their interests with the consent of only one of the partners is inimical to the concept of a partnership, which requires the consent of all the partners to the admission of a new partner, since in a partnership each partner is the agent of the other partners.

■ Plaintiffs contend, however, that aggregation is proper even if Associates is not a partnership, since all the participants derive their rights from identical contracts with the original partners and all have identical claims against defendants. We do not believe that this represents a correct reading of the law. As the Court stated in Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969), aggregation is permitted "in cases in which two or more plaintiffs unite to enforce a single

title or right in which they have a common and undivided interest" (emphasis added). Here, each participant has rights deriving from his separate contract. This fact critically distinguishes the case from those relied on by the Beckermans.[1]

Since aggregation is impermissible, jurisdiction over the non-derivative suit can be sustained only if the Beckermans' individual claim satisfies the jurisdictional amount. They argue that it does, because the jurisdictional requirement is met both by their claim for compensatory damages and by their demand for punitive damages.

■ The rule governing dismissal for lack of the jurisdictional amount was clearly stated by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938):

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 288–289, 58 S.Ct. at 590 (footnotes omitted).

Accordingly, if there is any possibility whatever that the Beckermans could recover either compensatory or punitive damages in excess of ten thousand dollars, dismissal is improper.

■ Taking the question of punitive damages first, we note that punitive damages may provide the basis for jurisdiction unless "it is apparent to a legal certainty from the complaint that [plaintiffs] could not recover . . . sufficient punitive damages to make up the requisite [amount]." Bell v. Preferred Life Assurance Society, 320 U.S.

---

1. The Beckermans rely principally on Berman v. Narragansett Racing Ass'n, 414 F.2d 311 (1st Cir. 1969), cert. denied, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970) and Dierks v. Thompson, 414 F.2d 453 (1st Cir.

1969). In both cases, the Court of Appeals made it clear that the plaintiffs did not have individual claims which they could assert, but rather that the only claims belonged to the class.

238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943). In the leading case of Walker v. Sheldon, 10 N.Y.2d 401, 233 N.Y.S.2d 488, 179 N.E.2d 497 (1961), the New York Court of Appeals stated that "there may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability." *Id.* at 405, 223 N.Y. S.2d at 491, 179 N.E.2d at 499. Expressing no view on the merits, but taking, as we must on this motion, the allegations of the complaint as true, we cannot say that it would be impossible for the Beckermans to satisfy the requirements of the New York rule and to recover punitive damages. There is no doubt that the New York standard is an extremely high one, making it difficult indeed for plaintiffs to recover punitive damages in this state. On the other hand, the federal standard for dismissal is also very high, and on the balance here we believe that it precludes dismissing the action.

The motion to dismiss the non-derivative suit for lack of the jurisdictional amount must therefore be denied. This disposition makes it unnecessary to determine whether the Beckermans' claim for compensatory damages also exceeds ten thousand dollars.

We turn to the motion to dismiss as it applies to the derivative suit. Defendants claim that the derivative suit must be dismissed for lack of diversity under the rule enunciated in United Steelworkers v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). However that may be, the fact that jurisdiction exists over the non-derivative suit would give this court pendent jurisdiction over the derivative suit, if such a suit can be maintained, regardless of the existence of diversity. Our decision that Associates is not a partnership, however, mandates the conclusion that a derivative suit is impossible, there being no entity on behalf of which to sue. Plaintiffs' counsel has not cited any cases, nor has our research discovered any which would permit a contrary conclusion. Accordingly, the derivative claim must be dismissed.

## II. Motion To Appoint a Receiver.

Although we have concluded that it cannot be determined as the record now stands that punitive damages cannot be granted as a matter of law, we nevertheless deny the motion for an appointment of a receiver. The appointment of a receiver would be a drastic remedy, not only in superseding the activities of the ordinary managers, but in imposing a perhaps burdensome and unnecessary expense on Associates itself, at least in the event that the plaintiffs do not ultimately prevail on the merits. Furthermore, although the allegations of the complaint supplemented by the affidavits supporting the motion are sufficient to prevent our concluding that punitive damages cannot be granted as a matter of law, they are not sufficient to prove, as they stand, a level of conduct on the part of the defendants which would justify the appointment of a receiver. Moreover, the individual defendant is an attorney at law subject to the special control of this court and amenable to professional discipline. If supervision of the operations of Associates pending the disposition of this litigation is necessary, it can in the circumstances be brought about by less expensive, formal and demeaning arrangements than a receivership, to the benefit of all concerned. For these reasons, the motion for the appointment of a receiver is denied without prejudice to the plaintiffs to move that the individual defendant be ordered to file with the court, at suitable intervals, such reports, prepared in accordance with generally accepted business or accounting principles, as will disclose the financial status and operations of Associates.

## III. Motion For a Class Action Determination.

Plaintiffs move for a class action determination under Rule 23(a) and (b)(1)(B), (2) and (3) (Fed.R.Civ.P.). Defendants concede that class action

treatment would be appropriate under Rule 23(a) and (b)(3), except that they claim that joinder of all members of the proposed class is not impracticable.

 The putative class consists of the approximately one hundred and fifty participants who invested in Associates. This number is sufficiently large to make joinder of all members impracticable. Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (district court ordered to allow class action for a class of seventy). We agree with the parties that the other prerequisites of Rule 23(a) are satisfied, and we so find.

We turn to the question which of Rule 23(b)'s sub-sections is most appropriate to this action. Plaintiffs propose Rule 23(b)(1)(B), (2) and (3). We agree with plaintiffs that 1) "adjudications with respect to individual members of the class . . . would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests" (Rule 23(b)(1)(B)); 2) "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole" (Rule 23(b)(2)); and 3) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (Rule 23(b)(3)). Accordingly, we determine that the putative class meets the requirements of Rule 23(b)(1)(B), (2) and (3).

 The consequence of finding that the class satisfies the requirements of Rule 23(b)(1)(B) and (2), as well as (3), is that the notice to the class will therefore not contain a provision allowing members to opt out, as it would if only 23(b)(3) were applicable (Rule 23(c)(2)). Van Gemert v. Boeing Co., 259 F.Supp. 125 (S.D.N.Y.1966).

 Notice must be sent to all proposed members at plaintiffs' expense. The notice submitted by plaintiffs is hereby approved with the following changes. First, all references to the participants as partners and to Associates as a partnership must be changed to conform with the findings of this decision. Second, a sentence should be inserted to indicate that the class action determination does not reflect any opinion held by the court of the merits of the case.

Defendants' motion to dismiss the non-derivative claim is denied; the motion is granted as to the derivative claim. Plaintiffs' motion for the appointment of a receiver is denied; their motion for a class action determination is granted.

Submit order on notice.