Margaret E. **TEDESCO**, Richard T. Carr, M.D., P.C., Dr. Richard T. Carr, Trustee u/w/o Dominick Milone, Dr. Thomas E. Stone, Dr. Emilita R. Stone, Dr. Herman S. Chester, and Mildred Chester, suing on behalf of themselves and of all others similarly situated, Plaintiffs,

v.

Stephen A. **MISHKIN**; HMC Investment Trust; HMC Investment Funds Nos. 001 through 014; Highcrest Management Company, Inc.; Paul Aronson; Irving Ouziel; David C. Dempsey; Donald N. Gibbs and Thomas R. Langan, Co–Partners (together with Stephen A. Mishkin) formerly doing business and practicing law as Mishkin, Dempsey, Gibbs & Langan; Thomas J. Langan Jr.; Donald Dempsey; Ruth Hertzlich; Carolyn De Groff; Robert Weil; Arthur J. Spring; Selahedin A. Velaj; the Bank of New York; Rosalie Mishkin; Ann Mishkin; English Sportswear, Inc.; and John Does Nos. 1 through 100, Defendants.

No. 82 Civ. 8753 (DNE).

United States District Court,
S.D. New York.

June 10, 1988.

---

Bailey & Hoeniger,[a] Berthold· H. Hoeniger, of counsel and Neil V. Getnick, New York City, for plaintiffs.

Stephen A. Mishkin, pro se.[b]

Emmet, Marvin & Martin, Dennis C. Fleischmann, New York City, of counsel for defendants The Bank of New York and Thomas J. Langan.

Bartels, Pykett & Aronwald,[c] Daniel J. Pykett, White Plains, N.Y., of counsel for

---

a. Effective January 1, 1984 the name of the firm changed to Bailey, Marshall & Hoeniger.

b. On February 21, 1984 GRAND & OSTROW filed a notice of appearance for Stephen A. Mishkin.

c. By letter dated December 3, 1984, plaintiffs' counsel advised the Court that the firm of Aronwald & Pykett, formerly Bartels, Pykett & Aronwald, also represents defendant Stephen A. Mishkin in connection with criminal investigations being conducted by the United States At-
torney's Office for the Southern District of New York and the Westchester County District Attorneys Office, and a disciplinary investigation being conducted by the Grievance Committee for the Ninth judicial District of the State of New York. The law firm has asserted cross claims on behalf of the defendants they represent in this action against Stephen Mishkin. After a hearing on the propriety of the firm's continued representation of the defendants in this action in light of the apparent conflict, the court on February 25, 1985, granted Aronwald & Pykett permission to withdraw as counsel herein. Af-

defendants Paul Aronson, Irving Ouziel, Donald Dempsey, Ruth Hertzlich, Ann Mishkin, English Sportswear and Carolyn De Groff.

Bergadano, Zichello & Babchik, Joseph A. Bergadano, New York City, of counsel for defendants David C. Dempsey, Donald N. Gibbs and Thomas R. Langan.

Pincus Ohrenstein Bizar D'Alessandro & Solomon,[d] Mark J. Bunim, New York City, of counsel for defendant Salahedin A. Velaj.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This is a class action alleging securities fraud and common law fraud and a pattern of racketeering activity. Plaintiffs are investors in various enterprises organized and controlled by defendants Stephen A. Mishkin and his associates, affiliates and co-defendants since approximately 1970. Plaintiffs seek damages and other relief from defendants for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), the Investment Company Act of 1940, the Investment Advisors Act of 1940, and on state statutory and commonlaw theories of recovery. Jurisdiction is founded on 15 U.S.C. §§ 77v, 78aa, 18 U.S.C. § 1964(c), and this court's pendant jurisdiction. Plaintiffs moved pursuant to Fed.R. Civ.P. 23 to certify the entire group of investors as a class. This court granted that motion. That motion was granted in open court. The instant opinion represents a memorialization of the court's reasoning in reaching that decision.

After the certification of the class, defendants moved to remove certain named plaintiffs and to disqualify plaintiffs' counsel. One named plaintiff is hereby ordered removed. The motion to disqualify is denied except that plaintiffs' counsel may not continue to represent Dr. Herman S. Chester as an individual.

## BACKGROUND

Defendant Stephen A. Mishkin ("Mishkin") is at the hub of the alleged conspiracy. Since 1970, approximately two hundred investors purchased unregistered securities in various corporations and partnerships created and/or controlled by Mishkin. During this time, Mishkin was an attorney and certified public accountant, duly admitted in both capacities in New York State. Plaintiffs allege that Mishkin purported to act in a professional capacity as attorney, accountant, or both for many members of the class, including class representative Dr. Richard T. Carr. Mishkin was a member of the law firm Mishkin, Dempsey and Langan, and its predecessor firm, Mishkin, Dempsey Gibbs & Langan. The members of Mishkin's law firm are also named as defendants in this action.

Mishkin was vice president and controlling owner of Highcrest Management Company, Inc. ("Highcrest"), a corporation organized by Mishkin in 1959, for the purpose of arranging real estate and other investments, brokering mortgages and making loans.[1] Plaintiffs allege that Highcrest was Mishkin's and his co-defendants' "principal instrument" in carrying out their scheme of securities and other fraud.

Mishkin created and acted as trustee for HMC Investment Trust, which plaintiffs contend is an investment company as defined in Section 3(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a–3. In 1978, defendants Mishkin, Paul Aronson ("Aronson"), Irving Ouziel ("Ouziel") and Robert Weil ("Weil")[2] established HMC In-

---

ter a second hearing, it was established that the relevant defendants knew of yet did not object to the conflict. Therefore, the firm was allowed to remain counsel of record for defendants English Sportswear, Inc., Paul Aronson, Donald Dempsey, Carolyn De groff, Ruth Hertzlich, Ann Mishkin and Irving Ouziel.

**d.** Effective November 28, 1983 the name of the firm changed to Ohrenstein & Brown.

**1.** Plaintiffs allege that defendants Paul Aronson, Irving Ouziel, Ruth Hertzlich and Carolyn De

Groff were also "controlling persons" of Highcrest, under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o and Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t.

**2.** Plaintiffs allege that Mishkin created a trust, designating Aronson as the sole trustee, through which Aronson is the beneficial owner of 75% of Highcrest's common stock and Ouziel is the beneficial owner of 25% of Highcrest's common stock. Weil is alleged to have teamed with

vestment Trust Funds Numbers 001 through 014, with Mishkin as trustee, and sold over eight million dollars worth of trust fund interests, denominated as trust certificates of beneficial ownership of "units." Plaintiffs allege that these "units" constitute "securities" within the meaning of the federal securities laws, but were never registered and were sold by means of false and misleading oral and written representations. Mishkin, Weil, Aronson and Ouziel allegedly used the proceeds from the sale of the "units": (1) for their personal use: (2) to subsidize the operations of Mishkin's law firm; (3) to speculate in high-risk investments; (4) to make periodic monthly payments to prior investors, and to redeem, at face value, units held by earlier investors; and (5) to pay commissions to defendants such as Donald Dempsey ("Dempsey") and Selahedin A. Velaj ("Velaj"), "finders," who were hired to solicit potential investors. The investment offering memorandum used to promote the sale of these trust units did not advise the plaintiff-investors of defendants' intentions to use the investment proceeds for these purposes.[3] Rather, the investment offering represented that the proceeds of the sale of the units would be invested "solely in short-term commercial debt obligations secured by the pledge of real or personal property and/or guarantees of financially responsible individuals, . . . ." [4]

Plaintiffs also allege that Mishkin, Weil, Aronson, Ouziel, Dempsey and Arthur Spring ("Spring")[5] made a public offering of Highcrest promissory notes and preferred stock through the use of false and misleading statements and without properly registering the offering under federal and state securities laws. In addition, during 1980, Mishkin allegedly made a public offering of 32 limited partnership units in Yardarm Associates, which were brought by members of the class for an aggregate price of approximately $300,000.00. This offering was also made by use of an offering document which plaintiffs allege was materially false. Plaintiffs further allege that Mishkin converted the funds invested in Yardarm Associates for his and his former wife Rosalie's personal use.[6] Finally, plaintiffs allege that Mishkin and his associates made unregistered public offerings and sales to class members of securities in

Mishkin in the creation of a series of companies, purportedly organized for the purpose of manufacturing yeast, which have not been successful, but which periodically have sought and received investments from class members. The complaint alleges that "defendants Weil and Mishkin have been architects and perpetrators of (i) the continuous wrongful diversion of monies, given in trust by members of the class to defendant Mishkin as Trustee of the HMC Investment Trust Funds for investment in purported no-risk short-term loans fully secured by mortgages or personal guarantees of financially responsible entities, to the high risk, speculative efforts to revive or maintain said yeast operation despite its repeated failures ever since January, 1970, and (ii) the conversion of such trust funds to the personal use and benefit of Mishkin, Weil and others." Amended Complaint at 12(a). Aronson, Ouziel and Weil are the alleged "active participants" with Mishkin "in the creation of defendant HMC Investment Trust and its Trust Funds Nos. 001 through 014...." Amended Complaint at 12(f).

English Sportswear, Inc. is also a defendant in this action. Plaintiffs allege that Mishkin, Highcrest and Aronson transferred approximately $450,000.00 worth of funds, fraudulently obtained from class members, to English Sportswear.

3. Plaintiffs also allege that defendants Ruth Hertzlich and Carolyn De Groff actively participated in the fraud involving the trust units. Ms. Hertzlich was the treasurer of Highcrest and office manager of his law firm. She allegedly signed and mailed many of the documents and letters to the class members promoting investment in HMC Investment Trust Funds Nos. 001 through 014. Ms. De Groff was Highcrest's secretary and Mishkin's personal legal secretary. She allegedly signed, issued and mailed the certificates of beneficial ownership in HMC Investment Trust Funds Numbers 001 through 014.

4. The investment offering contained other alleged misrepresentations and/or misleading statements.

5. Spring is an attorney, admitted to practice in New York State. He is alleged to be one of the sponsors of several of the fraudulent stock offerings, and to have represented Mishkin in various matters arising out of the fraudulent stock offerings.

6. Mishkin's present wife, Ann Mishkin, is also a defendant. Plaintiffs allege that Ann Mishkin received property from Steven Mishkin which was fraudulently obtained from class members. Plaintiffs contend that as recipient of this property, she is an indispensable party to this action.

other investment vehicles organized and/or controlled by Mishkin, such as American Yeast Corporation, Automated Sound Studios and Wrist–A–Matic Corporation. These sales are also alleged to be made by means of knowing misstatements and omissions of material facts. In aggregate, the class has invested over $10 million in Mishkin's various investment vehicles.

The remaining defendants are Thomas J. Langan ("Langan") and the Bank of New York. Langan was the President and a director of the Bank of New York. Plaintiffs allege that during the course of the conspiracy, Mishkin was Langan's personal accountant and attorney. Langan, in turn handled all of Mishkin's and his corporations' loan applications to the bank. The bank approved loans, not only for Mishkin and his entities, but also for prospective investors in Mishkin's investment vehicles. Plaintiffs further allege that Langan made these loans when he knew or had reason to know that Mishkin and his entities would be unable to repay the loans without using funds fraudulently obtained from class members. Moreover, it is alleged these loans enabled defendants to continue to defraud plaintiffs.

Plaintiff Margaret E. Tedesco ("Tedesco"), suing on behalf of herself and of all others similarly situated,[7] filed this action. Shortly after the complaint was filed, defendants Mishkin and Highcrest both filed petitions for reorganization under Chapter 11 of the Bankruptcy Code.[8] Pursuant to section 362(a) of the Bankruptcy Code, the filing of the petitions stayed any further proceedings against Mishkin and Highcrest, in this action and any other action.[9] Plaintiff Tedesco initiated adversary proceedings in both bankruptcy cases for a modification of the automatic stay in order to permit the instant action to proceed against Mishkin and Highcrest. A joint hearing was held before Bankruptcy Judge Howard Schwartzberg, and he subsequently entered an order modifying the automatic stay in both cases to permit this action to proceed.

Plaintiff Tedesco later filed a motion for class certification. The class sought to be certified was:

> All persons (including individuals, trusts, pension and/or retirement plans, partnerships and corporations), other than defendants, who acquired, for value, securities or "units" of the original 1970 Highcrest Investment Trust and/or HMC Investment Trust Funds Nos. 001 through 014 and/or of any other Mishkin or Highcrest "investment" vehicles and/or enterprises, and who have sustained realized or unrealized losses thereon, or whose funds have been converted, embezzled, or obtained through securities or other fraud, a pattern of racketeering activity, breach of contractual obligation, breach of fiduciary duty or malpractice, on the part of defendants or any of them.

This court granted the motion for class certification orally in open court and advised the parties that an opinion would follow.

## DISCUSSION

For certification as a class action, the plaintiff class must meet all the requirements set forth in Fed.R.Civ.P. 23(a): (1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) fair and adequate representation. In addition, plaintiffs must satisfy one of the requirements listed under Fed.R.Civ.P. 23(b). Plaintiffs here have relied upon Fed.R.Civ.P. 23(b)(3) which requires a showing that common questions of law or fact predominate over

---

7. Upon leave of the court, plaintiff Tedesco filed an amended complaint which added, *inter alia*, Richard T. Carr, M.D., P.C. and Dr. Richard T. Carr, Trustee u/w/o Dominick Milone as additional named plaintiffs. Approximately two months later, plaintiffs filed with leave of the court a supplemental amended complaint naming Dr. Thomas E. Stone, Dr. Emilita R. Stone, Dr. Herman S. Chester, and Mrs. Mildred Chester as additional named plaintiffs.

8. Highcrest's Chapter 11 reorganization proceeding has been subsequently converted, with Highcrest's consent, into a Chapter 7 liquidation proceeding.

9. Four individual actions have been brought in New York Supreme Court: *Szmarg v. Mishkin*, Supreme Court, Westchester County; *Simon v. Mishkin*, Supreme Court, Westchester County; *Carr v. Mishkin*, Supreme Court, Westchester County; and *Paul v. Highcrest Management Co.*, Supreme Court, Westchester County.

questions affecting only individual class members, and that a class action is the superior method for the fair and efficient adjudication of the controversy.

Requirements of Rule 23(a)

1. *Numerosity.*

■ The proposed class contains more than two hundred members. This amply satisfies the numerosity requirement of Fed.R.Civ.P. 23(a). *See Beckerman v. Sands*, 364 F.Supp. 1197 (S.D.N.Y.1973) (150 prospective class members satisfied numerosity requirement). Thus, in the instant case, the goals of class action treatment, the avoidance of multiplicity of suits and the advancement of efficiency and economy, would be achieved.

■ Several defendants contend that because only certain class members have claims against them, the class must be divided into subclasses. They further contend that the number of class members in such subclasses would be too small to meet the numerosity requirement.[10] Based on the allegations in the amended complaint, the exhibits, affidavits and the proceedings herein, the court finds that subclass designation is not appropriate at this time. *See Brady v. Lac, Inc.*, 72 F.R.D. 22, 27 (S.D.N.Y.1976). Plaintiffs have alleged that defendants aided and abetted with the intent to participate in the Mishkin–Highcrest scheme of investment fraud.[11] The fact that various defendants have had direct contact only with portions of the plaintiff class does not diminish their liability to the *entire* class, provided they intended to further the conspiracy. It is well settled that each co-conspirator is liable for the acts of other co-conspirators and that all co-conspirators are jointly liable, regardless of how small their role was in the conspiracy. *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1074 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Foreman v. Ambach*, 525 F.Supp. 722, 730 (S.D.N.Y.1981). If upon completion of discovery the court finds that certain defendants did not knowingly participate in the conspiracy, or that their liability is confined to a well-defined subsection of the class, the court, at that time, will modify the class to provide for subclasses. *See* Fed.R.Civ.P. 23(c)(1); *see generally* Manual For Complex Litigation § 30.1, at 30–13 (Draft Feb.1985) ("court should authorize multiple classes and subclasses only to the extent that the need is clearly demonstrated").

10. Defendants Dempsey, Gibbs and Thomas R. Langan, Mishkin's former law partners, contend that only those class members who were legal clients of the Mishkin law firm can have claims against the firm and its members, and therefore those clients must be designated as a subclass. Similarly, defendants The Bank of New York and Thomas J. Langan contend that only those class members who were customers of the Bank can have non-RICO claims against it and that those customers must be grouped into a separate sub-class. Defendant Velaj contends that only those persons he referred to Mishkin have any claims against him and that those persons should be designated a subclass.

Regarding at least the theoretical subclass of former clients of Mishkin's law firm, the numerosity requirement would apparently be met. Any consideration of subclasses, however, is, at this juncture, premature.

11. The amended complaint alleges that Mishkin's former law partners "have substantially benefitted from and have either had actual knowledge of the wrongful acts and conduct of Mishkin and his other co-defendants as herein alleged, or ... recklessly ignored ... clear signs that their law partner, Mishkin, was engaged in a continuous scheme of securities and other fraud, breach of fiduciary duty and malpractice, and failed to ascertain the true facts as hereinafter alleged which were readily available to them." Amended Complaint, 13(e), at 14–15. *See also id.*, 47–49, at 43–46; Plaintiffs' Reply Affidavit, 27–28, at 27–29.

As to defendants Bank of New York and Thomas J. Langan, the amended complaint alleges that these defendants repeatedly renewed Mishkin's existing loans, restricted such loans to cover continued overdrafts and made new loans, when they knew or should have known that such actions would further Mishkin's fraudulent scheme. Amended Complaint, 50–54, at 46–54. *See also* Plaintiffs' Reply Affidavit in Support of Motion for Class Certification, 34–46, at 34–41. *Cf. Minpeco, S.A. v. ContiCommodity Serv., Inc.*, 552 F.Supp. 327, 330 (S.D.N.Y.1982) ("While mere act of lending money to a conspirator does not cause one to be a co-conspirator, one who finances a conspiracy with the intent of participating in and aiding in the conspiracy may be liable.").

Finally, the amended complaint alleges that defendant Velaj acted as a paid finder of investors in the Mishkin–Highcrest investment vehicles. Amended Complaint, 13(n) & 44, at 23 & 40.

2. *Common Questions of Law or Fact.*

■ Rule 23(a)(2) requires that common questions of law or fact be shared by the prospective class, although not every question of fact or law raised need be common to every member of the class. 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure (Civil) § 1763, at 603–04 & n. 85 (1972 & Supp.1983) and cases cited therein. This action presents a number of issues common to the class members regarding the Mishkin–Highcrest investment vehicles and how the investments were used. These issues include: whether defendants made false statements of material facts or failed to disclose material facts necessary to render the statements not misleading; whether securities sold by defendants were required to be registered before being offered and sold to the public; whether defendants acted as investment companies or investment advisors without being registered as such; whether defendants converted, fraudulently conveyed, or otherwise unlawfully misappropriated assets derived from members of the class; and whether some defendants aided and abetted and participated in the alleged scheme of continuous securities and other fraud, *see Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981) ("existence and scope of the alleged conspiracy among the defendants is itself a question common to the class"). In view of the multiplicity of common questions of law and fact, the requirement of Rule 23(a)(2) is satisfied.

Rule 23(b)(3) requires a further showing that the common questions predominate over the individual questions. Defendants in opposing the motion for class certification contend that individual questions predominate in this case for two reasons. First, defendants contend that each investment vehicle specified in the amended complaint was a separate and distinct enterprise. Accordingly, plaintiffs' allegations of over fifteen years of fraud involving a multitude of these distinct entities produce individual issues that predominate over the common issues.

■ When plaintiffs allege a common strand of misrepresentations or omissions running through the statements used to promote investment during the class period, or a single common thread to which all the fraudulent activity related, class certification is appropriate under Rule 23(b)(3). *See e.g., Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *see also In re Agent Orange Prod. Liabl. Litig.*, 100 F.R.D. 718, 722–724 (E.D.N.Y.1983) (court certified class under Rule 23(b)(3), even though there was no single act of negligence or proximate cause applicable to each potential class member and each defendant), *aff'd*, 818 F.2d 145 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 695, 98 L.Ed. 2d 647 (1988). In deciding whether common questions predominate, the court must make a pragmatic evaluation of the interests of class members and litigation economies. Plaintiffs have alleged a common course of fraudulent conduct, at the core of which is Mishkin. Mishkin was vice-president of Highcrest. He created and acted as trustee for Highcrest Investment Trust and HMC Investment Trust Fund Nos. 001 through 014. Although the stated investment policies differed among the Investment Trust Funds, Mishkin treated the investors in the separate funds as if they all had invested in one entity.[12] He was controlling owner of American Yeast Corporation, Yardarm Associates and other corporations through which he allegedly channeled money provided by members of the plaintiff class. Moreover, plaintiffs have submitted evidence that all or substantially all of the money given by the class members to any of the fourteen Investment Trusts was removed from the trusts by Mishkin and commingled with the money of his other corporations. Plaintiffs' Reply Affid., Ex. 2. Evidence shows that the Bank of New York also treated all Mishkin enterprises as inter-related. *Id.*, Ex., 4, 7, 11. Thus, although the complaint alleges a

**12.** For example, plaintiffs have produced a letter dated February 8, 1982, in which Mishkin advised the beneficiaries of *all* of the HMC Investment Trusts that he was terminating the trusts. Plaintiffs' Reply Affid., Ex. 3.

variety of fraudulent activities extending over a period of fifteen years, these activities are all related and linked by the alleged pattern of conduct and the person of Mishkin. Under the allegations and the evidence thus far adduced, plaintiffs have satisfied their burden under Rule 23 of alleging that these enterprises were part of a common course of fraudulent conduct, rather than distinct entities engaged in disparate acts of fraud.[13]

Defendants also contend that the claims for relief in the amended complaint are based predominately on oral rather than written representations. Thus, they contend, individual questions will predominate, because the court will be forced to determine exactly what representations were made to each person in the plaintiff class. *See In re Scientific Control Corp. Sec. Litig.*, 71 F.R.D. 491, 500, 504 (S.D.N.Y. 1976).

■ Defendants' contention is unavailing for two reasons. First, plaintiffs have produced written investment offerings for many of the Highcrest Trusts, as well as other Mishkin enterprises, on which plaintiffs relied in making their investments. *See* Plaintiffs' Affidavit at 17–18. Second, to the extent that plaintiffs rely on oral representations, it is well established that when, as in this case, the misrepresentations and omissions are alleged to be only one aspect of an entire scheme to defraud, common questions sufficiently predominate over individual questions. *Friedlander v. Nims*, 571 F.Supp. 1188, 1198–99 (N.D.Ga. 1983); *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 96 (S.D.N.Y.1981); *Nelson v. Quimby Island Reclam. Dist. Fac. Corp.*, 26 Fed.R.Serv.2d 755, 748 (N.D.Cal.1978) [available on WESTLAW, 1978 WL 1094]. That different representations might have been made to induce investment in each Highcrest Trust does not give rise to a predominance of individual

issues. *See Blackie v. Barrack*, 524 F.2d 891, 902–03 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). It is also firmly established that the possibility of individual questions as to reliance and damages is not sufficient to deny class certification. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Accordingly, plaintiffs have satisfied the requirement of Rule 23(b)(3) that common issues predominate over individual issues.

3. *Typicality.*

The typicality requirement overlaps with, and was intended to buttress, the common question requirement of Rule 23(b)(3) and the adequate representation requirement of Rule 23(a)(4). *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981); *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.), *aff'd*, 437 F.2d 619 (2d Cir.1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). A claim satisfies the typicality requirement if it "arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Dura–Bilt*, 89 F.R.D. at 99.

■ Defendants' only contention that plaintiffs' claims are not typical of claims of the other class members is that the named plaintiffs did not invest in most of the companies or trusts that the other members of the plaintiff class invested in. This contention is contradicted by the allegations in the supplemental amended complaint. In aggregate, the named plaintiffs invested in many of the investment vehicles through which the alleged fraudulent scheme was conducted.[14] More importantly, to satisfy the typicality requirement, it is not necessary for the named plaintiffs to have invested in all of the investment ve-

---

13. This case is readily distinguished from *Hudson v. Capital Mgt. Intern. Inc.*, 565 F.Supp. 615 (N.D.Cal.1983) in which the court denied class certification under Rule 23. In *Hudson*, the defendants were 43 individuals who were officers and directors in a multitude of partnerships and related companies. The court noted that "the cast of characters" involved in each entity and each offering "varied dramatically."

*Id.* at 620. In contrast, the core "cast of characters" involved in each investment vehicle here remained constant.

14. Tedesco invested $100,000 in HMC Investment Trust Fund No. 008; Dr. Richard T. Carr invested in aggregate of $150,491 in Highcrest Investment Trust and in HMC Investment Trust Funds No.s 003, 005 and 010; Dr. Carr, as

hicles. *See Dura–Bilt*, 89 F.R.D. at 99. The supplemental amended complaint alleges a single pattern of fraud. The named plaintiffs' claims arise out of that scheme, which also gives rise to the claims of the other class members. Further, the claims of the named plaintiffs and the class members are based on identical legal theories. *See Santiago v. Philadelphia*, 72 F.R.D. 619, 625 (E.D.Pa.1976). Thus the claims of the named plaintiffs are typical of the claims of the other class members.

### 4. *Adequacy of Representation.*

As further addressed in the discussion of the motion to remove named plaintiffs, this court finds the requirement of adequate representation is fully satisfied in the instant case. It is apparent that the named plaintiffs are committed to the successful prosecution of their claims and the claims of all other class members. As of the filing of the motion for class certification, plaintiff Tedesco had already advanced $10,000 towards the costs and disbursements of this action. Moreover, the Additional Committee of Mishkin creditors, consisting of eleven class members, has signified its approval and support of this class action by advising Bankruptcy Judge Schwartzberg of its support of plaintiff Tedesco's application to modify the automatic stay in the Mishkin and Highcrest Chapter 11 cases. There is thus every indication that this action is favored and supported by the members of this class.[15] Moreover, as discussed *infra*, plaintiffs' attorneys are more than adequate to the task of seeing this case to its ultimate resolution.

### Superiority

Rule 23(b)(3) enumerates four specific matters pertinent to a finding that common issues of law or fact predominate and that a class action is superior to other available methods for fair and efficient adjudication of the controversy: 1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; 2) the extent and nature of any other litigation concerning the controversy; 3) the desirability of concentrating the litigation of the claims in the particular forum; and 4) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3). Each of these considerations supports a finding that Rule 23(b)(3) is met.

There is no indication that any class member is interested in individually controlling the prosecution of a separate action. No other federal action has been brought against the defendants. The four individual actions previously brought by class members in New York Supreme Court are stayed under the automatic stay of section 362(a) of the Bankruptcy Code. No application has been made to lift or modify the stay to permit those actions to proceed. Dr. Carr, one of the class members who originally brought a separate state action, has joined as named plaintiff herein.

The continued stay of these state actions is also relevant to the second consideration under Rule 23(b)(3), the extent and nature of any other litigation concerning the controversy.[16] Further, even if the stay were not in effect, crucial theories of relief as-

---

trustee under the last will of Dominick Milone, invested $32,438.18 in HMC Investment Trust Fund No. 003; Dr. Thomas E. Stone and Dr. Emilita R. Stone invested in excess of $100,000 in Highcrest Management Company, Inc., Yardarm Associates, 1745 Caton Avenue Associates, and 441 Ocean Avenue Associates, and Mrs. Mildred Chester, along with her husband, invested in excess of $220,000 in HMC Investment Trust Funds Nos. 004, 005 and 010 and in Yardarm Associates.

**15.** Defendants Aronson, Ouziel, Dempsey, Hertzlich and De Groff contend that the named plaintiffs cannot adequately represent the class because their interests are antagonistic to those of

other class members. In support of this contention, they point out that certain members of the proposed class are themselves defendants in the same action. This contention is simply inaccurate; the proposed class expressly excludes all defendants. They also aver that because many relatives of defendants are eligible as members of the proposed class, their interests and the interests of the named plaintiffs are "obviously antagonistic." The court finds no basis for this conclusory contention, and accordingly rejects it.

**16.** Defendant Bank of New York has instituted proceedings in state court against several class members for default on certain loans, allegedly

serted in the instant complaint, such as alleged violations of the anti-fraud provisions of section 10(b) of the Securities Exchange Act of 1934 and section 1962 of RICO, would be unavailable in state court. *See* 15 U.S.C. § 78aa; 18 U.S.C. § 1964(c).

Concentration of the litigation in this particular district is both desirable and practical. The vast majority of class members and all but two defendants reside or have their principal offices here. All or substantially all of the relevant records are here. Most of the unlawful acts were allegedly committed here. Finally, expert witnesses from the securities industry are readily available in this district.

Finally, there are no particular difficulties likely to be encountered in the management of this action as a class action. The class is relatively small and its members are easily identifiable from defendants' records.

For the foregoing reasons, the motion for class certification was granted and the proposed class is hereby certified. Counsel for plaintiffs shall submit a draft of their proposed Fed.R.Civ.P. 23(c)(2) notice forthwith.

*Motion to Disqualify Counsel and
Remove Certain Named Plaintiffs*

Following this court's initial certification of the class, defendants moved to disqualify plaintiffs' counsel and to modify [17] the class by removing certain named plaintiffs. The motion to remove certain named plaintiffs is granted in part and denied in part. The motion to disqualify is granted to the extent that plaintiffs' counsel may not represent Dr. Herman S. Chester in his individual capacity. In all other regards, defendants' motion is denied.

Motion to Remove Named Plaintiffs

*Dr. Chester*

The motion to remove Dr. Chester is grounded on defendants' assertion that Dr. Chester cannot be deemed an adequate representative of the plaintiff class. Following a review of the law and the circumstances of this case, the court rules that Dr. Chester is to be removed as a representative of the class.

Dr. Chester allowed himself to be named a co-trustee of HMC Investment Trust No. 005 in 1978. Dr. Chester resigned from that position in 1980. In its amended complaint, the plaintiff class has asserted that the fourteen HMC Investment Trusts, including number 005, were used as tools to defraud investors. Therefore, the defendants assert there is a conflict of interest in that Dr. Chester, as a trustee of Trust 005, may be liable to the class if the class prevails at trial.

Plaintiffs respond that no conflict exists in that Dr. Chester played no role in defrauding the investors in Trust 005. Rather, plaintiffs claim that Dr. Chester was merely a dupe of the defendant Mishkin and played no active role in supervising Trust 005.[18]

arranged by Mishkin. Those proceedings are related to some of the issues involved in this case. However, this action is clearly superior because the bank is named as a co-conspirator. This action will result in a more comprehensive appraisal of each parties' liability to the other. Moreover, it would be both inequitable and inefficient for the court to allow the bank to be excluded from class certification, merely by filing state actions against members of the class.

17. Defendants decline to specify precisely what modifications they seek. Although this court has removed one named plaintiff, for the reasons stated in the prior discussions of numerosity and common questions of law or fact, there is no need to modify the previously certified class.

18. In a misguided effort to demonstrate that Dr. Chester could not be liable to the class, plaintiffs themselves detailed the extent of Dr. Ches-

ter's failure to exercise care in overseeing Trust 005. Dr. Chester: "never received or had custody of any assets of the trust ... was never authorized to sign on any account of the trust ... never signed checks or other instruments or documents on behalf of the trust ... never received any information regarding the trust, its affairs or its property ... his requests to Mishkin for information regarding the trust went unheeded ... never considered or acted independently or otherwise upon any decision regarding the trust, its investments or any other aspect of trust affairs ... never participated in any communication, verbal or written, to or from anyone purporting to be an 'investor' or 'beneficiary' in HMC Investment Trust 005 ... was never requested to nor did he render any account regarding the trust or its affairs." Plaintiffs' Sur–Reply Memorandum of Law Opposing Motion by Defendants to Disqualify at 6–7.

Even if the court were to accept the plaintiffs' assertion that Dr. Chester was himself victimized by the defendants, it does not follow that his interests lie exclusively with the plaintiff class. Inactivity on the part of a co-trustee does not serve to insulate that fiduciary from potential liability for the breaches committed by his fellow trustees. *See* In re *Will of Newhoff,* 107 Misc.2d 589, 596–97, 435 N.Y.S.2d 632, 638 (Surr. Nassau Co. 1980), *aff'd,* 107 A.D. 2d 417, 486 N.Y.S.2d 956 (2d Dep't 1985); *see generally* Bogart, *Trusts and Trustees,* §§ 584–91, 701. All trustees have a duty to maintain a reasonable degree of watchfulness over the acts of their co-trustees. It is possible that Dr. Chester breached that duty and consequently is potentially liable to the class.[19]

In fact, Dr. Carr, another named plaintiff, had brought suit against Dr. Chester in New York Supreme Court, for losses suffered in connection with his investment in Trust 005. In the instant case, although the conflict is largely predicated on the technicalities of the law of trusts, the conflict cannot be ignored.[20] Under the law of trusts, if Dr. Chester and the class prevail at trial, Dr. Chester himself may be liable. Furthermore, the conflict goes to the very heart of the instant class action. The plaintiffs assert that the funds they invested in the HMC Investment Trusts were lost through conversion, misuse or dissipation by the trustees of those trusts. Dr. Chester was a co-trustee of one of the HMC Investment Trust. Due to this apparent conflict, Dr. Chester is removed as a named plaintiff.

### Dr. Carr

The defendants seek to remove Dr. Carr as a representative of the plaintiff class on the grounds of 1) his conflict of interest with Dr. Chester, and 2) that his discontinuance of his prior action against Dr. Chester renders him an inadequate representative of the interests of the class. For the reasons set forth below, the court finds that Dr. Carr may continue as a named plaintiff.

The defendants assert that there is a conflict of interest between Dr. Chester and Carr. This conflict, however, has been nullified by the removal of Dr. Chester as a representative of the class. Accordingly, the court need only address Dr. Carr's discontinuance of his state court action against Dr. Chester.

The defendants argue that if Dr. Carr were truly an adequate representative of the class, he would have sought to join Dr. Chester as a defendant in the class action. The defendants also assert that Dr. Carr's loyalties do not lie entirely with the unnamed class members. By way of support for this proposition, the defendants note that the stipulation discontinuing the state litigation provided a three year toll of the relevant statute of limitations. That toll applied only to Dr. Carr's claim, and did not serve to protect the rights of any unnamed class member who might seek to recover from Dr. Chester. Accordingly, the defendants argue that Dr. Carr has placed his interests before those of the class and is thus an inadequate representative.

Plaintiffs, in response, assert that the discontinuation of the action against Dr. Chester was in fact a tactical decision calculated to advance the interests of the class. In support of this proposition, plaintiffs assert that Dr. Carr's claim against Dr. Chester was based on the technicalities of the law of trusts and was thus unlikely to be viewed favorably by a jury. Further, plaintiffs note that the discontinued action sought to recover a relatively minor amount of money. Plaintiffs' counsel reasoned that any claim against Dr. Chester

---

**19.** Plaintiffs assert that as Dr. Chester was the trustee of an investment trust, he should be judged by the standards of conduct applicable to corporate directors rather than trustees. Even if this court were to accept this proposition, it would ultimately be of no moment. Like a trustee, a director may not ignore his duties and thus insulate himself from liability.

Plaintiffs also note that the trust agreement limits liability to willful breaches of the trust.

The fact that plaintiffs must argue for a lessened standard of review for the trustees of those trusts allegedly used to defraud the class merely serves to underscore the potential conflict.

**20.** The extent and viability of the claim against Dr. Chester is addressed in greater detail in this court's discussion of the motion to remove Dr. Carr as a named plaintiff.

would be tenuous and insignificant in size when compared to the potential judgment which might be entered against those individuals named as defendants. Therefore, it was decided that it was wiser to enlist Dr. Chester's aid in pursuing this case rather than alienating him by naming him as a defendant.

■ Class representatives need not assert every claim available to the class. Indeed, opting not to assert certain claims may be an essential part of adequately representing the class. *See Horton v. Goose Creek Independent School District*, 690 F.2d 470, 485 n. 27 (5th Cir.1982) (per curiam), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). In the instant case, the class had valid tactical reasons for not naming Dr. Chester as a defendant. Dr. Carr has promoted the cause of the class and has incurred more than $45,000 in legal fees and disbursements during the prior prosecution of his individual action, yielding substantial discovery, which is being made available to the attorneys for the class. A court may deny a motion to remove a named class representative when the conflicts of interest are outweighed by the best interests of the class. *See Foltz v. U.S. News & World Report*, 111 F.R.D. 49 (D.D.C.1986). Such a situation is presented in the instant case. Accordingly, the motion to remove Dr. Carr as a named plaintiff is denied.[21]

*Motion to Disqualify Plaintiffs' Counsel*

Defendants move to disqualify plaintiff's counsel, on the grounds of 1) failure to alert this court of the conflict of interest among and between Dr. Chester, Dr. Carr, and the plaintiff class and 2) despite the conflict between Dr. Carr and Dr. Chester, plaintiffs' counsel continued to represent both men.

■ Attorneys representing a class bear an independent duty to protect the interests of that class. *See Rhode*, Class Conflicts in Class Actions, 34 Stan.L.Rev.

1183, 1203–05 (1982). As the unnamed members of the class are not present to protect their rights, the district court must accordingly take special care to guarantee the propriety and adequacy of the class' legal representation. *See Chateau de Ville Productions v. Tams–Witmark Music*, 474 F.Supp. 223 (S.D.N.Y.1979). In the instant case, defendants assert that plaintiffs' counsel was aware of the litigation between Dr. Chester and Dr. Carr, but decided to conceal that conflict from the defendants and the court. Although plaintiffs' counsel could have been more forthcoming, there has been no sufficient breach of the duty to disclose so as to require disqualification.

In plaintiffs' motion to add Dr. Carr as a party plaintiff, there is indeed a notation, albeit without elaboration, of the existence of a law suit in New York Supreme Court in which Dr. Carr was the plaintiff and Dr. Chester was one of several defendants. This disclosure was made three weeks before plaintiffs moved for class action certification and two months before plaintiffs moved to add Dr. Chester as a named plaintiff. Further, at least some of the defendants had actual knowledge of the action between Dr. Carr and Dr. Chester. For example, Mishkin, Highcrest, and Weil, all defendants in the instant class action, were also named as defendants in Dr. Carr's action in Supreme Court. The State Court action, with a listing of all the defendants involved, is noted in Mishkin's and Highcrest's Chapter 11 petitions filed on January 26, 1983. These petitions were in turn reviewed during or before February, 1983 by the in-house counsel for defendant Bank of New York. Thus, defendants' claim that plaintiffs actively sought to conceal the potential conflict between Dr. Carr and Dr. Chester is without merit.

Ideally, plaintiffs counsel would have been more zealous in alerting this court to the existence and underlying nature of the action between Drs. Chester and Carr.

---

21. Defendants also move to remove Margaret Tedesco and Dr. Thomas E. Stone as named plaintiffs. Although Mrs. Tedesco may be elderly, the court is secure in her ability to function as an adequate representative of the class.

In seeking to remove Dr. Stone, defendants assert that his claim is not typical of those of the majority of class members. As stated *supra*, this argument is unavailing.

This court is aware, however, of the increasing use of motions to disqualify counsel as a tactic in litigation. *See Board of Educ. v. Nyquist*, 590 F.2d 1241, 1243 (2d Cir.1979); *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir.1977); *Rice v. Baron*, 456 F.Supp. 1361, 1368–69 (S.D.N.Y.1978). Furthermore, the disqualification of counsel results in an immediate adverse affect on the client. This would be especially true in the instant case in which plaintiffs' counsel is thoroughly conversant with this case's long, tortuous history. Unless an attorney's conduct is so egregious that it "tends to 'taint the underlying trial'" *Board of Educ.*, 590 F.2d at 1246 (quoting *W.T. Grant Co. v. Haines*, 531 F.2d 671, 678 (2d Cir.1976)), a court should be hesitant to disqualify counsel. The failure to make more zealous disclosure of the discontinued law suit between Dr. Carr and Dr. Chester is not sufficiently egregious to justify removing plaintiffs' counsel from the instant class action. Defendants also argue that plaintiffs' counsel's simultaneous representation of Dr. Carr and Dr. Chester raises an irreconcilable conflict rendering them unfit as counsel for the class. The canons of legal ethics require undivided loyalty on the part of an attorney and instruct that even the appearance of impropriety be avoided. In a class action, it is especially important to avoid even the appearance of divided loyalties. *See Chateau de Ville Productions v. Tams–Witmark Music*, 474 F.Supp. 223, 226 (S.D.N.Y.1979); *Sullivan v. Chase Investment Services*, 79 F.R.D. 246, 258 (N.D.Cal.1978). This urgency lies in the court's duty to guarantee that the rights of the absentee unnamed plaintiffs remain protected. *Chateau de Ville Productions*, 474 F.Supp. at 226. As detailed earlier, a potential conflict of interest exists between the class and Dr. Chester. Accordingly, it is directed that plaintiffs' counsel withdraw from the representation of Dr. Chester in his individual capacity. Securing new counsel for the class at this point of the litigation would entail great difficulties and certainly cause delay. Plaintiffs' counsel are experienced in the prosecution of the securities and other fraud class actions and have a record of

successful results in such actions. The court has carefully monitored plaintiffs' attorneys through the course of this action. Plaintiffs' counsel competently presented evidence in a five day civil contempt hearing against Mishkin.[22] In addition, they have periodically submitted to the court comprehensive reports on the progress of discovery. The interests of the class would be well served by continued representation by plaintiffs' counsel.

## CONCLUSION

The class is hereby certified. Dr. Chester, however, is removed as a named plaintiff. Further, plaintiffs' counsel is diqualified from representing Dr. Chester.

SO ORDERED.

---

**22.** *See Tedesco v. Mishkin*, 629 F.Supp. 1474 (S.D.N.Y.1986).