ALEXANDER W. KENT, Respondent, v. UNIVERSAL FILM MANUFACTURING COMPANY, Appellant.

First Department, April 7, 1922.

Courts — domestic corporations subject to jurisdiction of courts of this State — partnership — parties — employee of partners paid by percentage of profits under separate agreement with each not partner nor necessary party to action for accounting between partners — appeal — demurrer deemed abandoned if no argument presented in support on appeal — contracts — provisions in assignment of lease designating foreign courts for litigation not applicable to contracts between parties to assignment relative to conduct of business — domestic corporation cannot contract to oust courts of this State of jurisdiction.

Without exception, the Supreme Court of this State has jurisdiction over a domestic corporation, although sued by a non-resident.

In an action in equity between two persons, alleged to have been engaged in a joint enterprise, for an adjudication that they were copartners or joint adventurers and for an accounting, an employee who had a separate agreement with each, whereby each agreed to pay such employee, as compensation for services, a percentage of the respective shares of each in the assets and profits, is not a necessary party where it appears that the defendant in such action has fully accounted under his agreement with such employee for the period for which the plaintiff demands the accounting. Such an employee is not a copartner or coadventurer.

One who fails on appeal to present any argument in support of a ground for demurrer to the complaint must be deemed to have abandoned the same.

Plaintiff secured a lease of a theatre in the city of Havana, Cuba. He then entered into an agreement with defendant for the joint operation of the theatre. Later he obtained a new lease of the same theatre and assigned a one-half interest therein to defendant. Subsequently, he assigned the remainder of his interest to defendant. The latter assignment, as well as the new lease mentioned and the first assignment of a one-half interest, were all executed before a notary in Havana and contained the following provision: " The parties appearing designate this city and its courts for all judicial and extra judicial acts arising out of this document, with waiver of the jurisdiction of their own domiciles." Simultaneously with the execution of such assignment, an agreement between plaintiff and defendant was executed which referred to the lease, recited the earlier assignment of a half interest and the assignment on that day of the remaining half interest, stated that the object of the agreement was to explain the terms and conditions of the latter assignment and provided, in substance, that such assignment was solely of plaintiff's rights in the lease and that his interest in the profits of the theatre and its operation should remain the same as before, setting forth the substance of the original agreement. Neither this agreement nor the original agreement contained the clause quoted in reference to the exclusive jurisdiction of the Havana courts.

*Held*, that the provision in said latter assignment in respect to the jurisdiction in which the rights and obligations of the parties arising thereunder were to be enforced did not apply to either the original or the later agreement and were not intended to deprive either party of the right to invoke the jurisdiction of the Supreme Court of this State.

*It seems*, moreover, that the defendant, a domestic corporation, could not, even if it were so intended, contract to oust the courts of this State of jurisdiction to call it to account under its agreements with the plaintiff.

APPEAL by the defendant, Universal Film Manufacturing Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of May, 1921, denying defendant's motion for judgment on the pleadings consisting of a complaint and a demurrer thereto, and also from an order entered in said clerk's office on the same day overruling the defendant's demurrer to the complaint herein.

The pleadings consist of the complaint and a demurrer thereto on the grounds, (1) that the court has not jurisdiction of the person of the defendant; (2) that the court has not jurisdiction of the subject of the action; (3) that there is a defect of parties plaintiff in that one Fernando Poli is a necessary party plaintiff; (4) that said Poli is a necessary party defendant, and (5) that the facts stated are insufficient to constitute a cause of action.

This is a suit in equity to have it adjudged that the plaintiff and defendant were copartners or joint adventurers in the ownership and management of a theatrical and motion picture business conducted in the Teatro Campoamor, a theatre in Havana, Cuba, subject to assignments to said Poli by each of them of a ten per cent interest, and entitled to share equally in the profits over and above fifty per cent thereof, to which the defendant was entitled for furnishing film services and conducting the business, and ten per cent to which the said Poli was entitled for services rendered by him; and that defendant be required to account and for other and further relief. The complaint shows that the defendant is a domestic corporation, and exhibits annexed thereto contain recitals to the effect that at the dates thereof the plaintiff was a citizen of the United States but resided in Havana, Cuba. Plaintiff alleges that on the 31st day of August, 1916, he obtained from an association known as the Centro Asturiano de la Habana a lease of the theatre for the exhibition of motion pictures for the term of three years commencing September first of that year at a rental of $1,800 per month; that pursuant to the terms of the lease he deposited with the lessor $7,200 as a guaranty for the fulfillment of his obligations thereunder and paid the rent for one month in advance; that, in contemplation of his taking the lease, he and

the defendant entered into a copartnership agreement or joint adventure for conducting the motion picture business in the theatre for the period of the lease, which agreement was reduced to writing on the fifteenth of September, and a copy thereof marked Exhibit A forms part of the complaint; that the effect of the agreement was that the lease, although taken in the name of the plaintiff, was to belong to the parties in equal shares, and defendant assumed fifty per cent of plaintiff's obligations thereunder, and plaintiff was to sublet to the copartnership, and defendant was to reimburse him, as therein provided, to the extent of one-half of the amount so deposited with the lessor and paid on account of rent, and that the box office receipts were to be deposited as therein provided, and on the last day of each month $1,800 was to be set aside therefrom for rent for the succeeding month, and the other expenses of operation were to be deducted, and the balance was to be divided between the parties in the proportion of twenty-five per cent to the plaintiff and seventy-five per cent to the defendant, and defendant was to bear the advertising expenses. Plaintiff further alleges that he was so reimbursed by the defendant and that the parties commenced business under the agreement on the 1st of September, 1916, and conducted it continuously thereafter until on or about the 24th of October, 1918, when the theatre was destroyed by fire; that during that period, in accordance with the mutual understanding of the parties, not, however, definitely expressed in the agreement, defendant was intrusted with the supervision and management of the business including the books of account and box receipts; that part of the profits realized from the business was invested from time to time in furniture, fixtures and other assets needed by the enterprise, in all of which the plaintiff by virtue of the provisions of the agreement has an undivided one-half interest; that at the time the parties commenced business under the agreement they each agreed to give Fernando Poli, in consideration of the performance by him of certain services for the copartnership, five per cent of the net profits of the business, which amount was to be paid by defendant from the profits; that the distribution of profits under the agreement was to be made by defendant in the proportions of seventy per cent to defendant, twenty per cent to plaintiff and ten per cent to Poli; and that down to the 19th of October, 1918, the defendant accounted and paid over to the plaintiff twenty per cent and to Poli ten per cent of such net profits. It is further alleged that on or about May 29, 1917, the interests of the parties hereto required that the then existing lease be terminated, and that a new lease of the theatre containing modifications and different terms increasing

the rent to $25,000 per annum and extending the term to a period of three years from September 1, 1917, should be taken, but that it was understood and agreed that the then existing agreement between the parties for conducting the business should apply for the period of the new lease; that plaintiff accordingly procured in his name from the lessor a new lease, a copy of which marked Exhibit B is made part of the complaint; that on July 31, 1917, the parties agreed to modify their agreement with respect to the lease standing in plaintiff's name and his subletting to the copartnership by providing that he should assign to the defendant a one-half interest in the lease, and that they should become joint lessees, and should allow the theatre to be used by the copartnership pursuant to all of the other terms and conditions of their agreement; and that pursuant thereto plaintiff on that date assigned to the defendant a one-half interest in the lease, and a copy of the assignment marked Exhibit C is made part of the complaint. That assignment recites that it was made in consideration of the payment to plaintiff by defendant of $5,000; but plaintiff alleges that the payment was not made and that the assignment was made solely to carry out the modification of Exhibit A as agreed to by the parties, and that he received no consideration therefor. It is then alleged that the parties conducted the business under the new lease in the same manner as under the former lease until the fire; and that on account of the fire their business was discontinued until on or about the 10th of May, 1919; that on request of defendant, plaintiff paid on account of rent for the months of November and December, 1918, $400 per month, which it was mutually agreed was his share of the rental, being approximately twenty per cent thereof; and it was also agreed that the defendant's share was seventy per cent and that Poli's share was ten per cent; and that in those proportions they advanced the money for the rent, it having been mutually agreed that they were to be reimbursed therefor out of the first profits thereafter derived from the operation of the business; that on the 25th of January, 1919, by an instrument in writing in the Spanish language, plaintiff assigned his remaining interest in the lease to the defendant. A copy of the translation thereof into English is annexed to the complaint as Exhibit D. It is recited therein that plaintiff received from defendant $10,000 as consideration therefor, but plaintiff alleges that said consideration was not paid and that he received no consideration except the execution of another agreement, in writing, between him and defendant made simultaneously with the execution of said assignment and as consideration to plaintiff therefor, which agreement was approved and signed by Poli, and a copy thereof marked

Exhibit E is made part of the complaint, to the effect that said assignment of plaintiff's remaining interest in the lease was not to affect his rights, ownership or interest in the profits, proceeds or operation of the theatrical business conducted in the theatre; and that his said rights, ownership and interest were to remain the same as theretofore, as was also his ownership of one-half the deposit of $7,200, and of the assets of the partnership under Exhibit A; and that therein the terms of the partnership or joint adventure, evidenced by Exhibit A, under which the business had been conducted and was to continue, " were more fully set forth, and the term of said partnership was increased and specifically fixed so that it should continue until the termination " of the lease of the theatre dated May 29, 1917, " or any novation or extension thereof which should be granted to the defendant; " that said agreement specifically recognized and confirmed the assignment to Poli of five per cent by the plaintiff and of five per cent by defendant of the net profits of the business and provided that the profits were to be divided in the proportions of seventy per cent to the defendant, twenty per cent to the plaintiff, and ten per cent to Poli and recognized and confirmed the previous assignment by plaintiff and defendant to Poli of ten per cent of their respective interests in the assets of the partnership other than profits; that on the 18th of February, 1919, defendant, with the consent of Poli and the plaintiff, entered into a novation of the lease with the lessor by an instrument in writing in the Spanish language, a copy of which translated into English is annexed as Exhibit F; that the novation lease canceled the former lease and substituted therefor a new lease of substantially the same character but containing certain modifications and changes and extending the leasehold period until October 31, 1920, and from that time on from month to month and was intended by the parties to constitute a novation of the prior lease and that it was also intended that all of the provisions of the agreement, Exhibit E, relating to the copartnership between the plaintiff and defendant and to their respective interests in the profits, assets and money so deposited with the lessor should continue and remain in full force and effect for the term of the novated lease; that plaintiff offered to advance his proportion of the additional guaranty required by the novated lease but the defendant preferred, on account of its relations with the lessor, to make the additional deposit itself and did so by mutual agreement of the parties; that during the months of February, March and April, 1919, the theatre not having been fully repaired and restored so as to enable the resumption of the motion picture business, defendant requested

plaintiff to furnish and pay as a proportionate share of the rental the sum of $400 per month and he did so; that on or about May 10, 1919, the motion picture business was resumed as before and yielded sufficient revenues to pay the rent and all expenses and to leave net profits for which the defendant was obligated to account to the plaintiff under Exhibit E, and that in the operation of the business defendant recognized plaintiff's rights as a partner or joint adventurer the same as theretofore and frequently consulted him with regard to various matters arising in the conduct of the business; that on or about the 1st of July, 1919, plaintiff requested defendant to render an account of his share of the profits since the resumption of business and to pay the same, but this was not done and defendant assigned as the reason for not complying with the request, the illness of its bookkeeper, and a few days thereafter, defendant having reimbursed itself and Poli out of the net profits for advances made for rent, paid plaintiff $2,000 as a repayment of the advances made by him on account of rent and the further sum of $3,600 on account of his share of the profits for which no accounting had been rendered but that his share of the profits at that time greatly exceeded that amount, and that about two months after making such payments to the plaintiff defendant informed him that since it had become the sole lessee and the amount of plaintiff's share of the profits had not yet been determined because the accounts had not been made up, it desired, for bookkeeping purposes, to treat the payment to the plaintiff of the $3,600 as a return of one-half of the $7,200 deposited by him under the prior lease as a guaranty and he thereupon, at defendant's request, executed a receipt for said amount dated July 19, 1919, a copy of which is annexed as Exhibit G; that plaintiff again requested an accounting of his share of the profits and defendant again assigned the illness of the bookkeeper as an excuse for not complying with the request and further stated that if plaintiff needed money he could procure a loan from the bank and that defendant's agent would indorse his note for that purpose and accordingly defendant, through one King, its agent, indorsed plaintiff's note for $6,000 payable in ninety days, on an agreement by the plaintiff that defendant might hold as security for such indorsement his share of the profits for which no account had been rendered by defendant, and that on the 31st of October, 1919, when the note became due, defendant paid it and reimbursed itself by deducting the amount thereof from the plaintiff's share of the profits; that during the months of August and September, 1919, plaintiff continued to request the defendant to account for his share of the profits but it delayed so doing on various pretexts

and on or about the beginning of November, that year, wholly repudiated and denied the right of the plaintiff to any accounting in the premises and excluded him from any participation in the management of the business and claimed that he was no longer a partner in the enterprise; that ever since May, 1919, defendant conducted and still conducts the theatre under the novated lease and has derived large net profits from the enterprise over and above all losses and expenses and is obligated to account to the plaintiff for twenty per cent thereof as provided in Exhibit E and that plaintiff's share in such profits is greatly in excess of the $6,000 already paid by the defendant, and defendant, although repeatedly requested to render an accounting to plaintiff therefor, has failed and refused so to do excepting to the extent of paying the $6,000, and has appropriated to its own use the entire net profits derived from the business during said period with the exception of said $6,000 paid to the plaintiff and of ten per cent of the net profits paid to Poli and that ever since about the 1st of November, 1919, defendant has maintained and still maintains exclusive control over the books and assets of the partnership or joint adventure and has denied and still denies to plaintiff all access to the books and any control over the assets; that plaintiff has duly performed all of the terms and conditions on his part to be performed under the copartnership agreements, Exhibits A and E; that Poli is a resident of Cuba and without the jurisdiction of this court and not amenable to the service of process here and that defendant has accounted for and paid to Poli ten per cent of all the net profits realized from the business from the inception thereof to date, and that plaintiff has no adequate remedy at law.

The prayer for relief is that the plaintiff and defendant may be adjudged to be equal partners or joint adventurers in the ownership and management of said theatrical and motion picture business subject to the assignment by each to Poli of ten per cent of his interest as set forth in Exhibit E; that the parties are entitled to share equally in the surplus profits of the business after the deduction of fifty per cent of the profits to which the defendant is entitled as compensation for furnishing film service and conducting the business and the ten per cent to which Poli is entitled for his services and that defendant be directed to account to the plaintiff for all profits heretofore received by it whether in its own name or in the name of any other firm or corporation from the ownership or management of said theatrical and motion picture business or conducting it since the 19th of October, 1918, and to pay over to

35

the plaintiff such sum as shall be found due to him on the accounting, namely, twenty per cent, less the $6,000 heretofore paid and for other and further relief.

*Siegfried F. Hartman,* for the appellant.

*Powell, Wynne & Roberts* [*Clinton J. Ruch* of counsel; *John M. Lowrie* with him on the brief], for the respondent.

LAUGHLIN, J.:

Manifestly the first ground of the demurrer is without merit. No theory is presented or could be presented by which the Supreme Court of this State has not jurisdiction over a domestic corporation. When it incorporated under the laws of this State, it necessarily conferred jurisdiction upon the courts here whether sued by a non-resident, as is the plaintiff, or by a resident of this jurisdiction. In so far as the demurrer is on the grounds of a defect of parties plaintiff or defendant, it is equally without merit. The claim is that Poli is a necessary party plaintiff or defendant, on the theory that he was one of the copartners or joint adventurers. He was not a party to the agreement of the plaintiff and defendant with respect to conducting this theatrical business. He was merely employed as their manager and either instead of receiving wages or salary or in addition thereto, each of the copartners or joint adventurers agreed to give him ten per cent of their respective shares of fifty per cent of the net profits and that payment was to be made to him by the defendant from the net profits. Doubtless that gave him such an interest in the business as would have entitled him to an accounting if he desired it (*Valdes* v. *Larrinaga,* 233 U. S. 705; *Weldon* v. *Brown,* 84 App. Div. 482); but according to the allegations of the complaint, which are admitted by the demurrer, defendant has fully accounted to him so that he has no further interest in the profits of the business during the period for which the plaintiff demands an accounting. We are not concerned with the question as to whether Poli would be liable to third persons as one of the partners. The point presented is whether the complaint shows that the parties intended that as between themselves he was to be a partner, and the only evidence of such interest is found not in an agreement between them and him, admitting him as a copartner or coadventurer, but in a separate assignment by each of them of a share of his interest to Poli as compensation for services, and a ratification of those agreements by Exhibit E, which plainly refers to plaintiff, and defendant only as the copartners and provides that they each own an undivided half interest in the $7,200 deposited with the lessor and own in equal shares all other assets of the enterprise, and with respect to such other assets

recites that both of them " have a private agreement with Fernando Poli, as manager of the Theatre by which they have assigned to him twenty per cent, or ten per cent each, of their interests." Counsel for appellant asserts that Poli was to bear losses also in proportion to his interest in profits.    But nothing is alleged warranting that inference.    The only other material facts alleged are that for a period during the reconstruction of the theatre Poli advanced a proportionate part of the rent on the understanding that he was to be reimbursed therefor out of the first profits thereafter realized; and that he was so reimbursed.

The intention of the parties is controlling in determining whether as between themselves Poli was to be a copartner or coadventurer (*Rockafellow* v. *Miller*, 107 N. Y. 507; *Salter* v. *Ham*, 31 id. 321; *Leggett* v. *Hyde*, 58 id. 272; *Heye* v. *Tilford*, 2 App. Div. 346.) There were here merely separate agreements between the plaintiff and Poli and the defendant and Poli by which in consideration and as compensation for his services to the enterprise each agreed to give Poli a specified percentage of his share of the assets and of the profits.    Those agreements constituted contracts of employment merely by each of the parties separately with Poli and did not make Poli a copartner or coadventurer.    (*Hathaway* v. *Clendening Co.*, 135 App. Div. 407; *Cassidy* v. *Hall*, 97 N. Y. 168; *First Nat. Bank of Meriden* v. *Gallaudet*, 122 id. 655; *Hill* v. *Curtis*, 154 App. Div. 662; *Merchants Nat. Bank* v. *Barnes*, 32 id. 92; *Burnett* v. *Snyder*, 81 N. Y. 550; *Rockafellow* v. *Miller, supra; Sanger* v. *French*, 157 N. Y. 213.)    In *Burnett* v. *Snyder* (*supra*) it was held that one contracting with a partner to share in his profits and bear a proportionate part of his losses as a partner does not become a copartner even as to third parties.    Since we are of opinion that Poli is not a partner or coadventurer, it is unnecessary to consider the further point as to whether if he were the action could be sustained, on account of his being a non-resident, without making him a party.    The allegations of the complaint and the provisions of Exhibit E indicate that Poli also has an assignment from each of the parties of ten per cent of their respective interests in the assets of the company other than moneys deposited as a guaranty for the fulfillment of the provisions of the lease; but it will be observed that the plaintiff does not demand a dissolution of the copartnership or joint adventure or the distribution of its assets. He merely demands an accounting for his share of the profits during the period for which the defendant has fully accounted to Poli and, therefore, on the facts *as alleged* Poli has no interest in this litigation.

Defendant presents no argument in support of its demurrer

that the complaint fails to state facts sufficient to constitute a cause of action and, therefore, must be deemed to have abandoned the same.

The remaining ground of the demurrer is that the court has not jurisdiction of the subject-matter of the action and that is predicated on the provisions of the 6th paragraph of Exhibit D annexed to the complaint. That is an agreement in Spanish made before a notary public in Havana between the plaintiff and the defendant, by which the plaintiff assigned to the defendant his remaining half interest in the lease, making the defendant the sole owner thereof. The assignment recited that the consideration therefor was $10,000, the receipt of which the plaintiff acknowledged, and with respect thereto the assignment contains the recital that the plaintiff was thereupon advised by the notary that having acknowledged the receipt of the consideration, defendant was free from all responsibility with respect thereto " even though in the future it should be proven that payment of the said sum was not made in whole or in part." The 6th paragraph is as follows: " *Sixth.* The parties appearing designate this city and its courts for all judicial and extra judicial acts arising out of this document, with waiver of the jurisdiction of their own domiciles." It will be observed that so far as now appears, this litigation does not involve the validity or construction of that assignment. The agreement relates only to an assignment of an interest in a lease of real property in the city of Havana, Cuba, and by the 6th paragraph the parties evidently intended to agree that any controversy arising between them with respect to the validity or construction of the assignment or a right or liability predicated thereon should be decided by the courts of that jurisdiction. The original lease of the theatre to the plaintiff (Exhibit B) and the assignment of a one-half interest therein to defendant (Exhibit C) contained provisions similar to those of the 6th paragraph of Exhibit D. They were all executed before a notary with the same formality as Exhibit D, and were intended as and became public documents relating to the theatre and its use, but neither Exhibit A nor Exhibit E was so executed and neither was intended as, nor was, a public document. The lessor was a party to the first assignment by plaintiff and thereby agreed that further assignments might be made from one party to the other and this doubtless accounts for the fact that the lessor was not a party to the Exhibit D, which is the second assignment. This action is predicated primarily on the agreement known as Exhibit A, which is the original agreement under which the parties embarked on this joint enterprise, and it contains no provision with respect to the jurisdiction of the

courts. The principal contention made by the defendant is that Exhibit E makes the provisions of paragraph 6th of Exhibit D part of the contract by which the relations of the parties were continued and to be determined. As already stated, Exhibit E was executed simultaneously with Exhibit D. Exhibit D was confined strictly to an assignment to the defendant of the plaintiff's remaining half interest in the lease and embraces nothing else. It was evidently realized that since the defendant by Exhibit D would become the owner of the entire lease, it was necessary or at least advisable to have a formal agreement to the effect that this was not intended as a termination of the joint adventure or of the rights and interests of the parties with respect thereto other than concerning the ownership of the lease, and that such rights and interests should continue as theretofore so long as defendant remained lessor of the theatre under the then existing lease or under any novation thereof. It is not material whether the law of that jurisdiction precluded the embodiment in Exhibit D of appropriate reservations in this regard or why two agreements were made. Exhibit E refers to the lease and recites the assignment of a half interest therein to the defendant with the consent of the lessor and the assignment on that day of his remaining half interest; and with respect to the purpose for which Exhibit E was executed, it recites as follows: " And the object of this present document is to explain the terms and conditions of said assignment." It is then provided that the assignment that day made by the plaintiff to the defendant was " solely an assignment of his rights and interest in the contract of lease " and that it in no manner limited or affected his rights, ownership and interest in the profits and proceeds of the theatre or of the operation thereof and that such rights and interests should remain the same as they had been from August 30, 1916, up to and including the termination of the lease of the theatre or any novation thereof which might be granted to the defendant, and that in order that there may be a complete understanding between the partners " the terms and conditions under which they have been working are herein set forth." In the succeeding paragraphs, the terms of their agreement (Exhibit A) are, in substance, restated. The 5th paragraph provides that although the defendant has become the sole lessee, plaintiff should continue as owner of one-half of the $7,200 deposited with the lessor. The 6th paragraph provides that all of the assets of the theatre operating company belong to the parties in equal shares and that each party had *a private agreement* with Poli as manager of the theatre by which he assigned to Poli a ten per cent interest. The 7th paragraph provided that in the future as in the past the

defendant should be treasurer of the partnership and should render weekly statements and balances and make weekly liquidations of the income from the theatre in the form theretofore observed. The 8th paragraph provides that the defendant as compensation for the film service supplied to the theatre, should receive fifty per cent of the net profits after deducting operating expenses as therein provided and the remaining fifty per cent should be divided equally between the parties and that defendant should pay for the advertising as theretofore. The 9th paragraph provides for the annual valuation of the assets for the purpose of determining the profits. The 10th paragraph provides that both parties ratify their agreement of December 31, 1918, with Poli according to which each of them assigned to him twenty per cent of his interest in the profits of the theatre and further provides that it is understood that the defendant should have seventy per cent of the total net profits, plaintiff twenty per cent and Poli ten per cent. I am unable to agree with the contention of the learned counsel for the appellant that the provisions of Exhibit D with respect to the jurisdiction in which any controversy between the parties is to be determined has become a part of the agreement for a copartnership or joint adventure and requires that the courts of this State, under the laws of which the defendant was incorporated, shall refuse to entertain jurisdiction and relegate the plaintiff, who is a citizen of the United States but a resident of Havana, to the courts of the Republic of Cuba. That contention is predicated on the claim that Exhibits D and E are to be deemed one agreement. They are, of course, to be *construed* together, and for the purpose of ascertaining what they mean may be read together as if a single agreement. (*Matter of Brandreth,* 169 N. Y. 437; *Marsh* v. *Dodge,* 66 id. 533.) That rule, however, does not require that the two separate instruments must be deemed consolidated and one for all purposes or that a separate and independent provision of one, such as the jurisdictional paragraph, which has no bearing on the construction to be placed on the two instruments is to be deemed incorporated in the other. (*Thorpe* v. *Mindeman,* 123 Wis. 149; 101 N. W. Rep. 417; *Milske* v. *Steiner Mantel Co.,* 103 Md. 235; 63 Atl. Rep. 471; *Barker* v. *Sartori,* 66 Wash. 260; 119 Pac. Rep. 611; *Knowles* v. *Toones,* 96 N. Y. 534; *Guerini Stone Co.* v. *Carlin,* 240 U. S. 264.) I am, therefore, of opinion that the provisions of Exhibit D with respect to the jurisdiction in which the rights and obligations of the parties arising thereunder are to be enforced do not apply to Exhibit E or to Exhibit A and were not intended to deprive either party of the right to invoke the jurisdiction of the Supreme Court of this State and should not be so construed. The Federal court regards

contracts by which parties attempt to confer exclusive jurisdiction over a particular court, foreign or domestic, as contrary to public policy and void. (*Gough* v. *Hamburg Amerikanische Packetfahrt Aktiengesellschaft,* 158 Fed. Rep. 174; *Kuhnhold* v. *Campagnie Generale Transatlantique,* 251 id. 387; *Mutual Reserve Fund Life Assn.* v. *Cleveland Woolen Mills,* 82 id. 508; *Prince Steam-Shipping Co.* v. *Lehman,* 39 id. 704; *Slocum* v. *Western Assur. Co.,* 42 id. 235.) In *Engel* v. *Shubert Theatrical Co.* (166 App. Div. 394) it was deemed sufficient to apply the rule of strict construction to such a contract and the court refrained from adjudicating with respect to the validity thereof. In *Gitler* v. *Russian Co.* (124 App. Div. 275) it was merely held that a contract, founded on a good consideration, with respect to the remedy to be adopted for the enforcement of an existing judgment would be given effect for the reason that no question of public policy was there involved such as is involved with respect to a general contract to oust the court of jurisdiction before a controversy has arisen thereunder. It does not appear to have been authoritatively decided in this jurisdiction whether the Federal court decisions will be followed; but I think they should be applied to the extent of holding that the defendant, a domestic corporation, could not, even if it were so intended, contract to oust the courts of this State of jurisdiction to call it to account under its agreements with the plaintiff. (See *Benson* v. *Eastern Building & Loan Assn.,* 174 N. Y. 83; *Meacham* v. *Jamestown, F. & C. R. R. Co.,* 211 id. 346; *Buel* v. *B. & O. Southwestern R. Co.,* 24 Misc. Rep. 646.) Therefore, no ground of the demurrer was well taken.

It follows that the orders should be affirmed, with ten dollars costs and disbursements, with leave to defendant to withdraw the demurrer and to answer upon payment of said costs and ten dollars costs of motion at Special Term.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Orders affirmed, with ten dollars costs and disbursements, with leave to defendant to withdraw demurrer and to answer on payment of said costs and ten dollars costs of motion at Special Term.