*593 OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant, Intek Integration Technologies, Inc., moves to dismiss plaintiffs complaint pursuant to CPLR 3211 (a) (1) on the ground that the parties’ software license agreement contained a forum selection clause requiring that the action be brought in the State of Washington. Intek also moves to dismiss because plaintiff failed to serve the summons and complaint in the manner required by CPLR 306-b. Plaintiff, CooperVision, Inc., cross-moves for an order pursuant to CPLR 306-b validating plaintiff’s second attempted service on defendant, or authorizing such other and further service as the court may direct.
The Software Licensing and Implementation Agreements
In early September 2003, CooperVision contracted with Intek Integration Technologies, a specialist in the design, development and implementation of warehouse management systems software, to purchase software and to provide services in connection with an automation project designed to modernize its distribution process at its facility in Henrietta, New York. Before contracting with Intek, CooperVision hired a warehouse management consultant who prepared a request for information, and directed it to several vendors, including Intek. Intek responded in May 2003, stating that its product warehouse librarian WMS software would meet CooperVision’s needs. In July 2003, CooperVision requested a proposal for Intek’s product, and in August 2003, Intek sent CooperVision its so-called RFP response. The RFP response sent to CooperVision by Intek provided: “The responses provided in this RFP process will be made part of the final contract between the winning company and CooperVision. Any changes to those responses after the contract award will be made only if authorized by CooperVision in writing.” (RFP response § 1.9 at 9.) Intek then drafted and sent to CooperVision a “Letter of Commitment.” Joseph E Stannard, the vice-president of Logistics for CooperVision, maintains in his affidavit that the letter of commitment was executed by both parties (the exhibit contained in CooperVision’s motion papers, however, is in blank). The letter of commitment contemplated that the parties would “enter into an agreement to procure a Warehouse Management System from Intek Integration Technologies, as proposed in Intek’s RFF response dated August 13, 2003, to CooperVision’s RFF dated July 24, *594 2003.” The letter of commitment provided that that agreement would be entered into “by September 26, 2003.”
Thereafter, in September 2003, the parties executed the two agreements which are at issue on this motion. The first was a warehouse librarian software license agreement, executed by Intek on September 4, 2003, and by CooperVision on September 8, 2003. This agreement contained the disputed forum selection clause. The second agreement was the warehouse librarian implementation agreement, also executed by Intek on September 4, 2003, and by CooperVision on September 8, 2003. The parties also executed a contract addendum on September 11, 2003, which CooperVision contends called for still more agreements, which would be executed in the future during the so-called initial warehouse analysis phase of the project. The addendum contemplated that “final software functionality requirements, implementation requirements, vendor and customer responsibilities, test plan methodology, and schedules will be established” during the warehouse analysis phase and that these several requirements and responsibilities “must be agreed to,” and “will be guided by the original RFP Response submitted by Intek.”
The implementation agreement, which did not contain the forum selection clause, provided that Intek would provide CooperVision “with the hardware, software and services” defined in the agreement, and that “Intek will configure, integrate, implement, and test the hardware, 3rd Party Software, and warehouse librarian product (collectively referred to as the ‘Warehouse Librarian System’)” for CooperVision at CooperVision’s Henrietta facility The implementation agreement also provided that Intek would “provide services to assist” Cooper-Vision “in the data conversion, system training and system start up to put the Warehouse Librarian System into production.”
The software license agreement, on the other hand, granted to CooperVision certain nonexclusive rights or a license to use the software programs identified in section 14 of the agreement, and more particularly in schedule A. The software license agreement defined the permissible uses that CooperVision may make of the software program, restricted CooperVision from transferring its rights in the product to a third party, and prohibited CooperVision from making copies or otherwise transferring the program to any computer system other than the designated server. The agreement identified Intek’s proprietary rights and *595 claims of confidentiality, provided a warranty, and gave Cooper-Vision rights to enter into future agreements to obtain updates and maintenance. The software license agreement was, without question, designed to protect Intek’s intellectual property rights in the software programs. It provided that upon breach Cooper-Vision agrees that Intek would suffer irreparable damage and would be entitled to preliminary injunctive relief as well as other remedies.
The software license agreement also contained a choice of law provision (laws of the State of Washington), and a forum selection clause: “The parties agree that King County in the State of Washington shall be the proper forum for any action, including arbitration, brought under this Agreement.” The same clause provided that, if Intek requested, CooperVision would “certify under oath that you have fully and faithfully observed all the terms and conditions of this agreement,] ” and that Intek could “at reasonable times and upon 24 hours notice, inspect your premises and equipment to verify that all of the terms and conditions of this agreement are being observed.”
The Forum Selection Clause
The issue before the court is whether the defendant is entitled to dismissal of the complaint pursuant to CPLR 3211 (a) (1) on the ground that the software license agreement contains a forum selection clause requiring the action to be brought in the State of Washington. On any motion to dismiss under CPLR 3211 the pleading is afforded a liberal construction and the facts as alleged are presumed to be true. (Leon v Martinez, 84 NY2d 83, 87 [1994].) Dismissal is warranted under paragraph (1) of subdivision (a) of CPLR 3211 “only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law.” (Leon, 84 NY2d at 88; see Goshen v Mutual Life Ins. Co., 98 NY2d 314, 326 [2002] [“motion may be appropriately granted only where the documentary evidence utterly refutes plaintiffs factual allegations, conclusively establishing a defense as a matter of law”]; 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002].)
Intek contends that the implementation agreement incorporates the software license agreement by reference, and that therefore the forum selection clause in the latter applies to the entirety of the parties’ dealings. We start with some first principles. Forum selection clauses are “prima facie valid and should be enforced unless enforcement is shown by the resisting *596 party to be ‘unreasonable’ under the circumstances.” (M/S Bremen v Zapata Off-Shore Co., 407 US 1, 10 [1972]; see also, Brooke Group Ltd. v JCH Syndicate 488, 87 NY2d 530, 534 [1996]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Williams, 223 AD2d 395, 398 [1st Dept 1996]; Matter of Fidelity & Deposit Co. v Altman, 209 AD2d 195 [1st Dept 1994].)
“To set aside that clause, [plaintiff] was required to show that ‘enforcement would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, i.e., a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court.’ ” (Bell Constructors v Evergreen Caissons, 236 AD2d 859, 860 [4th Dept 1997], quoting Price v Brown Group, 206 AD2d 195, 198 [4th Dept 1994].)
As New Moon Shipping Co., Ltd. v MAN B & W Diesel AG (121 F3d 24 [2d Cir 1997]) makes clear, however, the court should not reach the M/S Bremen formula until first it determines whether the disputed clause was a part of the parties’ contract. (Id. at 29-30 [“before applying M/S Bremen analysis, we must directly decide whether the contracts included a forum selection clause”].)[1] Because CooperVision contends that the software license agreement was not incorporated into the implementation agreement for the purpose of making the forum selection clause applicable to the latter, the relevant provisions of the parties’ agreements must be examined with some care.
“Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might ‘seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.’ ” (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989], quoting Robertson v Ongley Elec. Co., 146 NY 20, 23 [1895].) The implementation agreement did not expressly state that the forum selection clause in the software license agreement is incorporated by reference; instead it defined the “entire contract” between the parties as including the implementation agreement itself, the software license agreement, together with other unrelated documents, and it provided an “order of precedence” clause.
*597 “2. Entirety of Agreement
“This Agreement, the Order Acknowledgment in Schedule A, Software License Agreement, and Warehouse Analysis document represent the entire contract between Intek and the Customer as to the subject matter of the Agreement. In the event of any conflict between these documents as to their subject matter, it is agreed that the following order of precedence will be applied to the documents:
“1. Software License Agreement
“2. Implementation Agreement (this ‘Agreement’)
“3. Order Acknowledgment Specified in Schedule A “4. Warehouse Analysis Document as signed and accepted by Intek and the Customer “5. Warehouse Librarian Documentation” (emphasis supplied).
The absence of any express incorporation by reference, coupled with the choice of an “order of preference” clause, which is triggered only in the event of a “conflict between these documents as to their subject matter,” means that the drafter (Intek) intended that each agreement have and maintain its own identity in the absence of a conflict. (Cf., National Union Fire Ins. Co. of Pittsburgh, Pa. v Williams, 223 AD2d 395 [1st Dept 1996] [contracts having separate purposes].) In other words, this quoted language did not, as a general matter, expressly make each term of each writing a part of the others as if included therein, and did not, in specific and express terms, make the forum selection clause in the software license agreement a part of the implementation agreement. Each agreement served its own purpose and the software license agreement was referred to in the implementation agreement only for the purpose of identifying what the entire agreement of the parties consisted of, and what was to be done if a conflict in subject matter as between the separate agreements was discovered. (Rudman v Cowles Communications, 30 NY2d 1, 13 [1972] [“(a)lthough form is not conclusive, that the parties entered into separate written agreements with ‘separate assents’ rather than a ‘single assent’ is influential”]; Ripley v International Rys. of Cent. Am., 8 NY2d 430, 438 [1960] [“that they are different documents does not necessarily mean that they do not form a single contract, but it does indicate that they are sepa *598 rate unless the history and subject matter shows them to be unified” (citation omitted)].)[2]
Nevertheless, it is the general rule that written contracts executed simultaneously and for the same purpose must be read and interpreted together. (Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]; Manufacturers & Traders Trust Co. v Erie County Indus. Dev. Agency, 269 AD2d 871, 872 [4th Dept 2000].) This general
“rule, however, does not require that the two separate instruments must be deemed consolidated and one for all purposes or that a separate and independent provision of one, such as a jurisdictional paragraph, which has no bearing on the construction to be placed on the two instruments is to be . . . incorporated in the other.” (Kent v Universal Film Mfg. Co., 200 App Div 539, 550 [1st Dept 1922] [emphasis supplied]; see 22 NY Jur 2d, Contracts § 258 [“the rule that simultaneous instruments about a matter are to be construed together does not require that the instruments be consolidated for all purposes”].)
Inasmuch as the forum selection clause in the software license agreement has no bearing on the construction to be placed on the two contracts, the stated general rule does not require, in and of itself, that it be read as incorporated into the implementation agreement. That is the specific holding of Kent. The question thus devolves to whether Intek has met its burden on this preanswer CPLR 3211 motion to conclusively establish that the provisions of these two agreements require that it does.
Intek relies in large measure on the order of precedence clause. Yet, Intek fails to point to any conflict in “the subject *599 matter of the agreements]” which might trigger the operation of the order of precedence clause. Intek only says that one agreement had a forum selection clause and the other did not. Assuming for the sake of argument that this supposed conflict concerned the “subject matter” of the two agreements, a dubious proposition, the rule, when considering whether to apply an order of precedence clause, often found in federal government procurement contracts (Abraham v Rockwell Intl. Corp., 326 F3d 1242, 1254 n 6 [Fed Cir 2003]), is that silence in one or the other agreement or writing in question will not, alone, create a conflict triggering the operation of the clause. (Edward R. Marden Corp. v United States, 803 F2d 701, 704-705 [Fed Cir 1986].) If “the contract may be interpreted to avoid inconsistencies between the two [contracts], . . . there is no need to refer to the ‘Order of Precedence’ clause.” (General Eng’g & Mach. Works v O’Keefe, 991 F2d 775, 781 [Fed Cir 1993]; see Ralph C. Nash and John Cibinic, Acquisition Planning: Order of Precedence: Resolving the Battle of the Documents, 4 Nash & Cibinic Rep 23 [Apr. 1990] [“(m)ere silence in either the specifications or the drawings does not constitute a conflict between them”].) This is the rule generally in the construction contract field. (City of Minneapolis v Republic Creosoting Co., 161 Minn 178, 188-189, 201 NW 414, 419 [1924].) Accordingly, the mere absence of a forum selection clause in the implementation agreement does not create a conflict as between it and the software license agreement sufficient to invoke the former’s order of precedence clause.
In any event, the presence in one agreement of a forum selection clause and the absence in the other agreement of a similar clause does not concern the “subject matter” of these agreements, one of which concerned protection of Intek’s intellectual property rights, and the other of which governed the work to be provided by Intek to CooperVision in connection with its sale and installation of the software at the Henrietta facility. Forum selection clauses are provisions of an administrative or dispute-resolving nature, and do not concern an agreement’s subject matter. For these reasons, the order of precedence clause has no application to this motion.
The mere reference to the software license agreement as part of the “entire agreement” of the parties, without an express provision making the forum selection clause applicable to disputes arising under the implementation agreement, means that the parties intended that the forum selection clause be confined to the software license agreement. The implementa *600 tion agreement employed, at most, a general incorporation clause, and the reference to the software licensing agreement was only for the purpose of identifying it as one of the documents that comprised the overall agreement of the parties. The same scenario was treated in Sempra Energy Trading Corp. v Algoma Steel Inc. (300 F3d 242 [2d Cir 2002], affg for reasons stated in 2001 WL 282684, 2001 US Dist LEXIS 3001 [SD NY, Mar. 22, 2001] [overarching or master agreement referring to other agreements]). The well-settled rule is that “a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified.” (Guerini Stone Co. v P.J. Carlin Constr. Co., 240 US 264, 277 [1916]; see Hooper Assoc. v AGS Computers, 74 NY2d at 491 [quoted above]; 11 Lord, Williston on Contracts § 30:25, at 238 [4th ed 1999] [“where incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for such purpose only, and should be treated as irrelevant for all other purposes”]; 17A Am Jur 2d, Contracts § 391 [if “a reference is made to another writing for a particularly designated purpose, the other writing becomes a part of the contract only for the purpose specified, and is foreign to the contract for all purposes other than the one specified”].)
In New York, this rule finds expression in the construction contract cases, which hold that general “incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind the subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor.” (Bussanich v 310 E. 55th St. Tenants, 282 AD2d 243, 244 [1st Dept 2001]; see S. Leo Harmonay, Inc. v Binks Mfg. Co., 597 F Supp 1014, 1024 [SD NY 1984], affd 762 F2d 990 [2d Cir 1985]; Commercial Elec. Contrs., Inc. v Pavarini Constr. Co., Inc., 5 Misc 3d 1002[A], 2004 NY Slip Op 51155[U] [Sup Ct 2004].) “Provisions other than scope, quality, character and manner of the work must be specifically incorporated to be effective against the subcontractor.” (2 NY PJI2d 635 [2005].) In particular, clauses relating only to the resolution of disputes are not incorporated by a mere general incorporation clause; instead clauses of this kind must be incorporated by language “sufficiently specific” to assure that the parties intended that they apply. (Fischbach & Moore Elec. v Bell BCI Co., 2004 WL 1811392, *6, 2004 US Dist LEXIS 16331, *17 [WD NY, Aug. 11, 2004] [“subcontract fails to specifically incorporate the dispute *601 resolution clause”]; United States Steel Corp. v Turner Constr. Co., 560 F Supp 871, 874 [SD NY 1983] [“dispute” clauses not incorporated by a general incorporation clause]; A.F. Lusi Constr., Inc. v Peerless Ins. Co., 847 A2d 254, 261-262 [RI 2004] [collecting cases applying this rule]; Bussanich v 310 E. 55th St. Tenants, 282 AD2d at 244 [no specific incorporation of clauses pertaining to indemnification or insurance]; T. Bart Gary, Incorporation by Reference and Flow-Down Clauses, 10 Constr L [No. 3] 1, 45 [Aug. 1990] [cataloging decisions “follow(ing) Guerini Stone” which hold that general incorporation by reference only pertains “to the provisions concerning the nature and technical aspects of the work, unless a clear intention is expressed in the contractual language to incorporate administrative clauses concerning disputes or other procedures”].)
Applying these principles to this case, the parties could not have intended to incorporate the forum selection clause of the software license agreement into the implementation agreement, because they did not (or more precisely Intek did not) choose sufficiently specific language to do so. In another context, Intek made specific reference to individual provisions of the software license agreement pertaining to warranty that were specifically incorporated by reference into the implementation agreement (at 1Í 6 [b]). In addition, although schedule A was generally incorporated in paragraph 2 of the implementation agreement together with the software license agreement, the implementation agreement elsewhere incorporated several specific provisions of schedule A. In other words, when specific incorporation of a particular provision of an otherwise generally incorporated document was intended, it was accomplished by express language in the implementation agreement. The failure to do so in connection with the forum selection clause, therefore, is telling, and forecloses Intek’s argument. (Lodges 743 & 1746, Intl. Assn. of Machinists & Aerospace Workers, AFL-CIO v United Aircraft Corp., 534 F2d 422, 441 [2d Cir 1975] [“Strike Settlement Agreements (cannot) be read as incorporating by reference all relevant provisions of the collective bargaining contracts negotiated concurrently with them. Had that been the desire of the contracting parties, they could have done so expressly”].)
Intek seeks to avoid the force of this analysis by attempting to characterize CooperVision’s stated causes of action as, at least in part, including claims under the software license agreement. Intek refers, however, only to the allegation that Cooper-Vision prepaid Intek substantial sums of money “largely for *602 software and service which CooperVision . . . never received.” (Complaint 11 31.) But this contention ignores the language and purpose of the software licensing agreement set forth above, and treats it improperly as a purchase and sales contract. Manifestly, it is not such a contract. CooperVision’s claims are grounded in the implementation agreement, and schedule A, not the software license agreement. CooperVision’s core claims are that Intek failed to meet completion dates, failed to provide a qualified project manager, and failed to provide a functioning product. To the extent CooperVision grounds its claims on warranty, that claim is based on a provision of the implementation agreement 1Í 6 (b), which specifically incorporated the warranty provisions of the software license agreement. The forum selection clause of the software license agreement, on the other hand, was not specifically so incorporated.
Finally, the court agrees with CooperVision’s effort to liken this case to Sempra Energy Trading Corp. v Algoma Steel, Inc. (300 F3d 242 [2d Cir 2002], affg for reasons stated 2001 WL 282684, 2001 US Dist LEXIS 3001 [SD NY, Mar. 22, 2001]). Although the software licensing agreement took precedence if any conflict in subject matter was discovered as between the agreements, in the absence of conflict, the implementation agreement served as an “overarching” agreement just as did the asset management agreement (AMA) in Sempra. Furthermore, the AMA in Sempra, like the implementation agreement in this case, did not contain a forum selection clause, though it referred to other agreements between the parties that did have such a clause. It was held in Sempra, in language particularly apt to this case, that “it is not self-evident why these, or indeed any other, provisions in the [other agreements] should be considered additional terms of the [overarching agreement] rather than simply part of the terms and conditions governing distinct individual [contracts] undertaken to further the parties’ business relationship.” (Sempra, 2001 WL 282684, *5, 2001 US Dist LEXIS 3001, *16.) It was also important in Sempra that the forum selection clause in the other agreements referred to disputes arising under “this agreement.” (Sempra, 2001 WL 282684, *6, 2001 US Dist LEXIS 3001, *18.) The same language is used in the software license agreement’s forum selection clause.
Accordingly, the documentary evidence produced by Intek on this motion does not conclusively establish as a matter of law the applicability of the forum selection clause.
*603 The Motion to Dismiss on the Ground of Failure of Service
The motion to dismiss on the ground that CooperVision’s service was on the administrative assistant to Intek’s CEO, who was not authorized to accept service, and that CooperVision’s second attempted service was accomplished outside the 120-day period of CPLR 306-b, is denied. The process server’s affidavit alleged that the administrative assistant “advised she could accept service.” Intek says now that she was not authorized to accept service, but Intek fails to allege that she did not make the representation to the process server attributed to her, nor does Intek seek to establish that it would have been unreasonable in the circumstances for the process server to accept her at her word; she was, after all, the administrative assistant to the CEO. (Fashion Page v Zurich Ins. Co., 50 NY2d 265, 273 [1980]; Arvanitis v Bankers Trust Co., 286 AD2d 273, 273 [1st Dept 2001] [“it is the process server’s reasonable belief that is the crucial factor”].) In these circumstances, a traverse hearing is not necessary (cf., Matter of Bart-Rich Enters., Inc. v Boyce-Canandaigua, Inc., 8 AD3d 1119, 1120 [4th Dept 2004]), and the motion is denied.
The Motion to Dismiss the Tort Claims
The cause of action for fraud survives the motion to dismiss for a failure to state a cause of action at this stage of the proceedings. “A cause of action for fraud may arise when one misrepresents a material fact, knowing it is false, which another relies on to its injury.” (Graubard Mollen Dannett & Horwitz v Moskovitz, 86 NY2d 112, 122 [1995].) “A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties.” (Id.) Because plaintiff alleges that Intek’s representatives “represented orally” and in writings that are not a part of the contract that they could serve specific needs of CooperVision when they never intended to do so, an allegation that the court must take as true at this point, “a cause of action has been stated.” (Id.) Intek does not allege that the misrepresentations attributed to it “were not collateral or extraneous to the contract” because “they were expressly incorporated into the . . . agreement,” as was the case in Gupta Realty Corp. v Gross (251 AD2d 544, 545 [2d Dept 1998]). CooperVision alleges more in its complaint than “that the defendant entered into a contract with the intention not to perform.” (Id.; see Zuccarini v Ziff-Davis Media, 306 AD2d 404, 405 [2d Dept 2003] [“allega *604 tions of fraud are sufficiently collateral to the alleged agreement to support a claim of fraud in the inducement”]; Wagner Trading Co. v Tony Walker Retail Mgt. Co., 277 AD2d 1012 [4th Dept 2000].)
Intek relies on the integration and modification clauses of the agreements to defeat the reasonable reliance element of the fraud claims. As CooperVision contends, however, these clauses are insufficiently specific to defeat CooperVision’s claims. “[A] general merger clause is ineffective ... to preclude parol evidence that a party was induced to enter the contract by means of fraud.” (Manufacturers Hanover Trust Co. v Yanakas, 7 F3d 310, 315 [2d Cir 1993], citing Sabo v Delman, 3 NY2d 155, 161-162 [1957].) “When, however, the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations.” (Id., citing Citibank, N.A. v Plapinger, 66 NY2d 90, 94-95 [1985].) “[I]n order to be considered sufficiently specific to bar a defense of fraudulent inducement. . ., a guarantee must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim.” (Id. at 316.) I find that, after reviewing the New York cases canvassed in Yanakas (7 F3d at 316-317), the fraud in the inducement claims brought by CooperVision, tested under the standard applicable to CPLR 3211 motions (P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 375-376 [1st Dept 2003]), withstand Intek’s motion to dismiss. (See also, id. at 377-378 [reversal of order dismissing fraud claim in which the court observed that the disclaimer in the party’s agreement “might preclude a claim by plaintiff based upon representations made in the (contract) documents, but it does not preclude plaintiffs claim based upon representations that (defendant) made to plaintiff that (defendant) allegedly knew were false”].) “Where the fraud claim has been dismissed [in the New York cases], the disclaimer has been sufficiently specific to match the alleged fraud.” (Yanakas, 7 F3d at 317.)
Intek’s argument in its reply papers, drawn from the rule that statements of opinion and predictions of future events cannot support a fraud claim (Koagel v Ryan Homes, 167 AD2d 822 [4th Dept 1990]), not made in Intek’s original moving papers, is unavailing. While it is true that
“representations of opinion or predictions of some thing which it is hoped or expected will occur in the *605 future will not sustain an action for fraud[,] ... a statement concerning a future act which is made with the knowledge or intention that the act would not occur, as the complaint alleges that these representations were made, is deemed a statement of ‘a material existing fact sufficient to support a fraud action.’ ” (Chase Manhattan Bank, N.A. v Perla, 65 AD2d 207, 210 [4th Dept 1978], quoting Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403, 407 [1958].)
The allegations of the complaint are of the latter variety, and therefore defendant’s motion to dismiss the fraud claim is denied.
CooperVision sets forth two causes of action in negligence, one of which, the fifth cause of action, CooperVision has agreed to drop from the complaint. Intek’s motion to dismiss the fifth cause of action is granted. CooperVision, however, opposes the motion to dismiss the negligent misrepresentation claim. Intek contends that the parties had no special relationship to support a cause of action for negligent misrepresentation. (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987].) CooperVision correctly relies on Kimmell v Schaefer (89 NY2d 257, 263 [1996]; Fresh Direct v Blue Martini Software, 7 AD3d 487 [2d Dept 2004]) as authority supporting the proposition that the facts alleged in this complaint are “sufficient to plead the existence of the special relationship necessary to sustain th[e] cause of action.” (Fresh Direct, 7 AD3d at 489.) The Fresh Direct case also involved a contract for the purchase of computer software and related services pursuant to a software license and services agreement, and the motion to dismiss was brought, as in this case, pursuant to CPLR 3211 (a) (7). Accordingly, Intek’s motion to dismiss the negligent misrepresentation claim is denied.
The motion to dismiss the unjust enrichment claim is also denied. In the context of a preanswer motion to dismiss in which the complaint also states a valid cause of action for fraud in the inducement, “recovery under the equitable doctrine of quantum meruit is not precluded in the event the contracts are voided.” (Niagara Mohawk Power Corp. v Freed, 265 AD2d 938, 939 [4th Dept 1999].) Accordingly, as long as the fraud in the inducement claim remains in the case, the claim of unjust enrichment may coincide with an alternative breach of contract claim.
*606 Conclusion
For the reasons stated above, the motion to dismiss on the ground that the parties selected the State of Washington as the proper forum is denied. The motion to dismiss on the ground of failure of service is denied. The motion to dismiss the tort claims is granted in part and denied in part. The fifth cause of action is dismissed. The remaining tort claims survive this preanswer motion to dismiss.

. As plaintiff points out, without the forum selection clause in the mix, it makes absolutely no sense under forum non conveniens principles to litigate this dispute in the State of Washington. (CPLR 503 [a].)

. As Cooper Vision contends, the fact that the implementation agreement also had a choice of law provision which was identical to the choice of law provision in the software license agreement, signals that the agreements were separate, because acceptance of Intek’s incorporation argument would mean that the choice of law provision of the implementation agreement would be “mere surplusage.” (National Union Fire Ins. Co. of Pittsburgh, Pa. v Williams, 223 AD2d at 397; Ruttenberg v Davidge Data Sys. Corp., 215 AD2d 191, 196 [1st Dept 1995].) The presence in the implementation agreement of its own damage and other administrative provisions also would be duplicative or conflicting if Intek’s incorporation argument is accepted. Intek’s contention that paragraph 3 also incorporates the software license agreement is without merit. Paragraph 3, if anything, confirms the separate nature of the agreements, and confirms that Intek will do nothing by way of implementation or installation of the software unless the customer signs the intellectual property rights protection (i.e., licensing) agreement.